**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

EDWARD H. ALEWINE,           )
SHELLY M. ALEWINE,           )
                                     )
          **Plaintiffs,**        )
                                     )
**v.**                               )     **CASE NO.: 3:06cv886-MHT**
                                   )
AMERICA'S SERVICING COMPANY,  )
                                   )
          **Defendant.**       )

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now the plaintiffs, by and through counsel, and moves this Court for an order granting summary judgment in their favor as to their claims for violation of the RESPA and as to the defendant's status as a debt collector under the FDCPA and on their claims for violation of the FDCPA. As grounds therefore the plaintiffs would show as follows:

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why

summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Citing Smith v. Boyd Bros. Transportation, Inc., 406 F. Supp. 2d 1238; 2005 U.S. Dist. LEXIS 35732.

## STATEMENT OF THE FACTS

The plaintiffs executed a mortgage on their home in Valley, Alabama on May 23, 1998 (see exhibit 10 to Cindy Shanabrook's deposition, submitted into evidence as an attachment to this deposition). The plaintiffs' experience with their mortgage was mostly uneventful until financial difficulties forced the Plaintiffs into a Chapter 13 Bankrupcty filing in 1999 (see case number 99-05963-DHW-13).

On or about the 12th day of December 2000, Wells Fargo Bank Minnesota, as

trustee, f/k/a Norwest Bank Minnesota, moved the Bankruptcy Court to terminate

the automatic stay to permit foreclosure of the mortgage that is the subject of this

suit (see Shanabrook exhibit 11).  That motion was eventually denied by the Court

and during the intervening time service of the subject mortgage was transferred to

Ocwen who serviced the loan until through October of 2002 and who then

transferred the loan to America's Servicing Company for loan servicing beginning

effective November 1, 2002 (see exhibit 8 to Shanabrook deposition).  Once the

defendant began servicing the loan, the plaintiff began to have problems with their

mortgage account.  This resulted in one lawsuit against America's Servicing

Company that was filed on January 7, 2005 with the same style as the present case

but bearing case number 3:05cv16-C which made nearly identical allegations as

the present case but was resolved by agreement on July 25, 2005.  Almost

immediately after resolution of the first lawsuit, the defendant provided a notice to

the plaintiffs indicating that they had an escrow deficiency and altering their

payments.  On October 3, 2005, the plaintiffs issued to the defendant a Qualified

Written Request.  A copy of the qualified written request is attached to the

deposition of Cindy Shanabrook as exhibit 1 to the deposition.  (Said deposition

will be filed with the Clerk of Court concurrently with this motion).  In the

qualified written request, the plaintiffs provided proof of insurance for the previous

four years and requested that the defendant refund the charges, reinstate the correct payment amount and reverse any other charges incurred as a result of the defendant's false charge (Shanabrook exhibit 1).  However, the defendant failed to acknowledge the request until July 20, 2006 (see Shanabrook exhibit 3) and did not answer the request until August 7, 2006 (see Shanabrook exhibit 9).  Further, no changes or corrections to the Alewines' account have been made despite the admission of Shanabrook that the Alewines' account should be credited and brought current (Shanabrook 60:5-61:7).  These actions led to the second suit which the Alewines filed against America's Servicing Company.  The case is now ready for partial summary judgment on key issues.

<u>THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR RESPA CLAIMS</u>

As previously stated, the Alewines provided America's Servicing Company a qualified written request which was mailed on October 3, 2005 (Shanabrook exhibit 1).  It is undisputed that America's Servicing Company received the qualified written request on October 17, 2005 (Shanabrook exhibit 2).  Further, in her deposition (quoted below) Shanabrook admits that America's Servicing Company received the Qualified Written Request in October 2005:

30

20   Whereupon, Plaintiff's Exhibit

4

21      Number Two was marked for

22      identification.)

23

24        Ask you, is that in fact an

25      internal document generated by Wells

31

1    Fargo?

2        A.   (Witness reviewing document.)

3    Yes, sir.

4        Q.   And is that the document from

5    the Fidelity database?

6        A.   Yes, sir.

7        Q.   All right.  Now, does that

8    document indicate that Wells Fargo

9    received my qualified written request on

10    behalf of my clients, on or about October

11    17th of 2005?

12        A.   No, sir.

13          MR. ANDRESS:  What number is

14    this?

15        Q.  261.

16        A.  (Witness reviewing document.)

17    Oh.  Yes, sir.

18        Q.  It does?

19        A.  Yes, sir.

It is further admitted that America's Servicing Company's initial response to this document was on July 20, 2006 (Shanabrook exhibit 3) and that their response (276 days later) was not timely, see the following Shanabrook excerpt beginning at page 29:18:

29

18    When did Wells Fargo receive

19    that document?

20        A.  Approximately, the time period

21    after the date of the letter.

22        Q.  So Wells Fargo received that

23    document in October of 2005, correct?

24        A.  Yes, sir.

25        Q.  What is Wells Fargo's

30

1   responsibility, under the Real Estate

2   Settlement and Procedures Act, to respond

3   to a qualified written request?

4       A.   To respond within 20 days.

5       Q.   Okay.  Is it Wells Fargo's

6   position that they responded within 20

7   days in this case?

8       A.  No, sir.

Additionally, the defendant's 30(b)(6) representative Shanabrook admitted  that

the defendant's final response was wrong and that the Alewines were entitled to

have their account corrected but that America's Servicing Company had not taken

corrective action as of the date of the deposition, see Shanabrook excerpt

beginning at Shanabrook 59:19:

59

19   Let me back up a little bit

20    further.  Up to today, America's Servicing

21    Company's position has been that insurance

22    was not paid on this loan in 2000 and

23   2001, correct?

24        A.  Correct.

25        Q.  Okay.  And that is reason why

60

1   the payment changed on my client's

2   mortgage in, approximately, August of

3   2005?

4        A.  Correct.

5        Q.  Okay.  And it's my

6   understanding, that in preparing for this

7   deposition, America's Servicing Company or

8   Wells Fargo has realized that that is in

9   fact incorrect?

10        A.  Correct.

11        Q.  And that my client's do not owe

12   insurance for 2000 or 2001?

13        A.  That is correct.

14        Q.  Okay.  But that was not the

15   case in this response that was issued in

16   August of 2006, correct?

17     A.  Correct, sir.

18     Q.  Okay.  So is it Wells Fargo's

19   position, as we sit here today, that their

20   intention is to correct the mortgage

21   account of my client's and remove those

22   charges and bring everything current?

23     A.  Correct.

24     Q.  And that includes refunding all

25   the late fees and collection charges and

61

1   things that were put on the account since

2   then?

3     A.  Correct.

4     Q.  And that's what your

5   responsibilities are under the servicing

6   provisions of the RESPA Act, correct?

7     A.  Correct.

The law with respect to a mortgage servicer's obligations after receiving a Qualified Written Request is clear.  RESPA establishes certain duties for servicers of federally related mortgage loans when they receive qualified written requests from a borrower. <u>12 U.S.C. § 2605(e)</u>. A qualified written request is a written correspondence that enables the servicer to identify the name and account of the borrower and contains a statement of the reasons for borrower's belief that the account is in error. <u>12 U.S.C. § 2605 (e) (1) (B)</u>. The servicer must provide a written response acknowledging receipt of the borrower's qualified written response within twenty days of such receipt. <u>Johnstone v. Bank of Am., N.A., 173 F. Supp. 2d 809, 812 (N.D. Ill. 2001)</u> (citing <u>12 U.S.C. § 2605(e) (1) (A)</u>). The servicer must also do one of three things within sixty days of receiving the borrower's request: (1) correct the borrower's account and notify the borrower of such correction in writing; (2) investigate and provide the borrower a written explanation of the reasons for which the servicer believes the borrower's account is correct, or; (3) investigate and provide the borrower a written explanation of the reasons why the requested information is unavailable. <u>12 U.S.C. § 2605(e)(2)</u>.  It is undisputed that the defendant America's Servicing Company failed to respond or make corrections to the plaintiffs' account within the time allowed by law and summary judgment is proper as to this claim.

<u>THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE
ISSUE OF THE DEFENDANT'S STATUS AS A DEBT COLLECTOR</u>

Whether a defendant is a "debt collector" as defined by the FDCPA is a

question of law appropriate for resolution on summary judgment. (deciding that

defendants were debt collectors for purposes of a motion for summary judgment);

<u>Bailey v. Security National Servicing Corp.</u>, 154 F.3d 384, 387-88 (7th Cir. 1998).

The defendant contends that it is not a debt collector for purposes of this litigation.

The defendant bases its position on the following language of the Fair Debt

Collection Practices Act: Under the FDCPA, the term "debt collector" does not

include "any person collecting or attempting to collect any debt owed or due or

asserted to be owed or due another to the extent such activity . . . concerns a debt

which *was not in default at the time it was obtained* by such a person." <u>15 U.S.C. §
1692a(6)(F)(iii)</u> (emphasis added).  However, as the plaintiffs will demonstrate, the

debt in question was in default when acquired by the defendant.

The FDCPA does not define default <u>Prince v. NCO Fin. Servs., 346 F. Supp.
2d 744</u>**.**  Several district courts have addressed the definition of "default" under the

FDCPA and have applied the definition of "default" in the relevant statutory or

contractual provisions governing the debt between the original parties. See <u>Skerry
v. Massachusetts Higher Education Assistance Corp., 73 F. Supp. 2d 47 (D. Mass.
1999)</u>.  In the present case, default is defined by the mortgage contract which is

found as exhibit 10 to the Shanabrook deposition.  The definition of default in that

contract is found at paragraph 6(b) and states "If I do not pay the full amount of

each monthly payment on the date it is due, I will be in default."  Further, in the

present case, America's Servicing Company's began servicing the loan while the

plaintiffs were in Chapter 13 bankruptcy, see Shanabrook deposition page 64, lines

14-18:

64

14  Q.  I guess the issue here is, that

15    my clients -- you purchased the servicing

16    of this loan while my client's were in

17    bankruptcy?

18        A.  Correct.

Further, Shanabrook admitted that a bankruptcy is filed to protect a debtor

who is in default, see Shanabrook deposition page 63, line 23 through page 64, line

4:

63

23  Is a default triggered when a

24    person's in bankruptcy?

25        MR. ANDRESS:  Same objection.

64

1        Q.   You can still answer.

2        A.   The bankruptcy is filed to

3    protect the person when they are in

4    default.

Lastly, Shanabrook admits that when America's Servicing Company began servicing the loan in 2002 that the loan was in default.  See the following portion of Shanabrook's deposition:

66

5    Q.  Let me show you a document that

6    I have marked as Exhibit 11, and let you

7    take a look at that.

8

9        (Whereupon, Plaintiff's Exhibit

10       Number 11 was marked for

11       identification.)

12

13       A.   (Witness reviewing document.)

14    Yes, sir.

15       Q.   Who filed that -- well, let's

16    back up a little further than that.  Is

17    that a pleading filed in my client's

18    Chapter 13 bankruptcy?

19        A.  Yes, it is.

20        Q.  Was it filed in December of

21    2000?

22        A.  (Witness reviewing document.)

23    Yes, sir.

24        Q.  And who filed that pleading;

25    what company?

67

1        A.  Secure Creditor, Wells Fargo

2    Bank.

3        Q.  That'd be y'all, right?

4        A.  Yes, sir.

5        Q.  What does paragraph three say,

6    second sentence?

7        A.  "Said mortgage is payable in

8    monthly installments which include

14

9    principle, interest and escrow.  The

10    payments upon such mortgage are currently

11    post-petition delinquent for the months of

12    October through November, 2000."

13        Q.  Post-petition delinquent for

14    two months would be in default, right?

15        A.  Correct.

16        Q.  So when you bought this loan,

17    it was in default?

18        A.  Post-petition.

19        Q.  Default?

20        A.  Correct.

As the testimony of America's Servicing Company's corporate representative clearly states, America's Servicing Company believed that the loan was in default when they assumed the servicing of the Alewine mortgage.  In Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 2003 U.S. App. LEXIS 5488, the 7th Circuit held that the FDCPA applied to Fairbanks because Fairbanks believed the debt to be in default when purchased even though the underlying debt was not in default when purchased.  Based on the admissions of the defendant in

the record it is clear that America's Servicing Company is a debt collector for purposes of this action.

Additionally, even if the court believed the contention that the loan was not in default when purchased, the defendant is liable under the FDCPA because America's Servicing Company is a fictitious name for Wells Fargo.  Use of a fictitious name is a clear violation of the FDCPA which subjects a creditor to liability under the FDCPA even if they otherwise were exempt from FDCPA application see 15 U.S.C. 1692(a)(6).  This fact is admitted by the defendant, see Shanabrook deposition, beginning at page 18, line 23 through page 19, line 17as follows:

18

23   What is

24    relationship between Wells Fargo and

25    America's Servicing Company?

19

1        A.   America's Service Company is a

2    fictitious name for Wells Fargo.

3        Q.   Is that what -- when you say

4    fictitious, would you consider that a

5    trade name?

6        A.  Yes, sir, it's a trade name.

7        Q.  So there is no separate entity,

8    there is no legal entity, no other

9    corporation, called America's Servicing

10   Company?

11       A.  No, sir.

12       Q.  So, America's Servicing Company

13   is Wells Fargo?

14       A.  Yes, sir.

15       Q.  It is, for lack of a better

16   term, an alter ego?

17       A.  Yes, sir.

The FDCPA prohibits "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  As a general matter, creditors are not subject to the FDCPA. However, a creditor becomes subject to the FDCPA if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).  A creditor uses a name other than its own when it uses a name

that implies that a third party is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias." <u>Villarreal v. Snow, 1996 U.S. Dist. LEXIS 11930, 1996 WL 473386</u> at (N.D. Ill. Aug. 19, 1996).  In the present case, the defendant admits that America's Servicing Company is a fictitious name for the true debt collector, Wells Fargo and is therefore subject to the FDCPA (see Shanabrook deposition testimony cited above).

<u>THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS FDCPA CLAIMS AGAINST THE DEFENDANT</u>

Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim. <u>Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997)</u>.  In the case at bar, (assuming that the Court agrees with the plaintiffs that America's Servicing Company is a debt collector), the violations of the FDCPA are clear and many.  In addition to its violations of the FDCPA by using a fictitious name referenced in the preceding section.  America's Servicing Company has, repeatedly, since the beginning of their servicing of this mortgage, attempted to collect from the plaintiffs amounts that are not owed.  Specifically, the defendant has attempted to collect insurance premiums for the year of 2000 and 2001 which they admit are not owed.  See the following portion of Shanabrook deposition beginning at page 59, line 19 and continuing through page 60, line 13:

59

19  Let me back up a little bit

20   further.  Up to today, America's Servicing

21   Company's position has been that insurance

22   was not paid on this loan in 2000 and

23   2001, correct?

24       A.  Correct.

25       Q.  Okay.  And that is reason why


60

1   the payment changed on my client's

2   mortgage in, approximately, August of

3   2005?

4       A.  Correct.

5       Q.  Okay.  And it's my

6   understanding, that in preparing for this

7   deposition, America's Servicing Company or

8   Wells Fargo has realized that that is in

9   fact incorrect?

10       A.  Correct.

11    Q.  And that my client's do not owe

12    insurance for 2000 or 2001?

13    A.  That is correct.

Because America's Servicing Company sought to charge the plaintiffs for this insurance that was not owed, America's Servicing Company changed the client's payment amount on their home mortgage.  Section 1692e(2)(A) prohibits the false representation of "the character, amount, or legal status of any debt" by a debt collector.  Butler v. International Collection Serv., 1989 U.S. Dist. LEXIS 19102.  Misrepresenting, directly or by implication, the amount that a consumer owes to satisfy any debt or alleged debt is a violation of the FDCPA. FTC v. Check Investors, Inc., 2005 U.S. Dist. LEXIS 37199.

Further, according to the defendant's own internal mortgage servicing documents (America's Servicing Company bates stamps 234-272, attached to the brief) shows that the defendant made over 300 contacts or attempted contacts with the plaintiffs over this debt which was not owed by the plaintiffs (this number is determined by reviewing the left column of the bates stamped documents for the entry "COL" which represents an entry documenting contact or attempted contact by the defendants collection department, see Shanabrook deposition page 56, lines 4-10).  Each of these contacts was a violation of Section 1692e(2)(A) because the defendant sought to collect an amount that was not owed and misrepresented the

amount owed by the plaintiff, see <u>Butler</u> & <u>FTC</u> supra. The plaintiffs are entitled to summary judgment on their claims against America's Servicing Company for violation of the Fair Debt Collection Practices Act.

Wherefore, premises considered, the plaintiffs pray that Your Honor would take up this matter and enter Summary Judgment in their favor on their RESPA claims, on the status of the defendant as a debt collector and on the defendant's egregious violations of the Fair Debt Collections Practices Act.

Done and filed this 9th day of August 2007.


_/s/_Nick Wooten_____
Nick Wooten
Attorney for the Plaintiffs



**OF COUNSEL:**

Wooten Law Firm, P.C.
Trial Lawyers
P.O. Box 290
10 Second Avenue S.E.
LaFayette, AL  36862
Tel:     (334) 864-2132
Fax:     (334) 864-2133

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing upon counsel of record for the defendant to this action by use of the ECF filing system on the date the same is registered as filed within the ECF filing system.

Keith Andress
 Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
 420 N. 20th Street, Ste. 1600
 Wachovia Tower
 Birmingham, AL 35203

  /s/ Nick Wooten
OF COUNSEL