

7495 New Horizon Way
Frederick, MD 21703

August 7, 2006




Wooten Law Firm, P.C.
Nick Wooten
PO Box 290
LaFayette, AL 36862

Dear Sir:

RE: Loan Number 1099003191 Client 106
Edward and Shelly Alewine

Thank you for contacting America's Servicing Company (ASC) regarding the above referenced loan.

Our records reflect that the servicing of this loan was transferred to ASC on November 1, 2002. At the time of transfer, an escrow advance balance existed on the loan, in the amount of $637.50. This balance was the result of two advances made by the previous mortgage company for the payment of lender placed insurance. The first disbursement in the amount of $323.00, made on October 25, 2000, was for lender placed insurance coverage effective from August 3, 2000 through August 3, 2001. Then on August 8, 2001, funds in the amount of $314.50 were advanced as payment for coverage effective from August 3, 2001 through August 3, 2002.

An escrow account is not currently in effect for the payment of property taxes and insurance for this loan. However, the escrow advance balance remains due, as reflected in the enclosed Mortgage document and communicated in the correspondence issued to the above referenced mortgagors on July 18, 2005 and March 30, 2006, respectively. If evidence of existing insurance coverage for the time period of August 3, 2000 through August 3, 2002 is available, please contact ASC. Once this documentation is received and reviewed, we will work with the previous mortgage company, Ocwen Federal Bank, to obtain a refund of the necessary lender placed insurance premiums that were advanced from the loan. Please be assured, if the refund amount exceeds the advance balance, the excess funds will be refunded to the mortgagors.

Also enclosed is a transaction history of the loan from August 1, 2004 to the present date, for your review.




7495 New Horizon Way
Frederick, MD 21703



Should you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you Monday through Friday between the hours of 8:00 AM and 6:00 PM, in your time zone.

Sincerely,

America's Servicing Company

Enclosures




7495 New Horizon Way
Frederick, MD 21703

July 18, 2005

Edward H Alewine
Shelly M Alewine
1102 Alewine Dr
Valley AL 36854

RE: Loan Number 1099003191
Client 106

Dear Edward H Alewine and Shelly M Alewine :

A review of your account indicates that your account has an escrow deficiency for the payment of taxes and/or lender placed insurance in the amount of $636.90. These funds were advanced by us on your behalf. We have adjusted your payment to spread this amount over 12 payments beginning with your payment due October 01, 2005. Your new payment amount is as follows:

| | | |
|---|---|---|
| Principal & Interest | $ | 382.85 |
| Escrow Deficiency Spread | | 53.08 |
| Total Payment | $ | 435.93 |

We have not established an escrow account for future payments of taxes and/or insurance. If you would like to have an escrow account for the payment of these items, please forward a written request along with copies of your tax bills and insurance policy to the following address:

ASC
PO Box 10388
Des Moines IA 50306-0388

Should you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you 9:00 AM to 6:00PM, Eastern Time, Monday through Friday. You may also obtain information about your loan through our automated Personal Mortgage Information Line, 24 hours a day, 365 days a year.

Sincerely,

ASC

AN005/VS1




7495 New Horizon Way
Frederick, MD 21703

March 30, 2006

Edward H Alewine
Shelly M Alewine
1102 Alewine Dr
Valley AL 36854

RE: Loan Number 1099003191
Client 106

Dear Edward H Alewine and Shelly M Alewine :

A review of your account indicates that your account has an escrow deficiency for the payment of taxes and/or lender placed insurance in the amount of $605.57. These funds were advanced by us on your behalf. We have adjusted your payment to spread this amount over 12 payments beginning with your payment due April 1, 2006. Your new payment amount is as follows:

| | | |
|---|---|---|
| Principal & Interest | $ | 382.85 |
| Escrow Deficiency Spread | | 50.47 |
| Total Payment | $ | 433.32 |

We have not established an escrow account for future payments of taxes and/or insurance. If you would like to have an escrow account for the payment of these items, please forward a written request along with copies of your tax bills and insurance policy to the following address:

ASC
PO Box 10388
Des Moines IA 50306-0388

Should you have additional questions, please call our Customer Relations Department at 800-842-7654. A representative will be able to assist you 8:00 AM to 6:00 PM, Eastern Time, Monday through Friday. You may also obtain information about your loan through our automated Personal Mortgage Information Line, 24 hours a day, 365 days a year.

Sincerely,

ASC

AN005/FSN

Return to:
O. Wayne Spence, P.C.
2945 Gardenia Street
Columbus, Georgia 31906

Please Return To:
MORCAP, INC.
7000 CENTRAL PARKWAY, STE 1570
ATLANTA, GA 30328

[Space Above This Line For Recording Data]

# MORTGAGE

LOAN NO.: 6218003450

THIS MORTGAGE ("Security Instrument") is given on May 23, 19 98.
The mortgagor is EDWARD H. ALEWINE ~~JR.~~, and SHELLY M. ALEWINE, HUSBAND AND WIFE ("Borrower").

This Security Instrument is given to MORCAP, INC.

whose address is 7000 CENTRAL PARKWAY, STE. 1570, Atlanta, GA 30328 ("Lender").

Borrower owes Lender the principal sum of thirty seven thousand five hundred and NO/100ths Dollars (U.S. $ 37,500.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on May 29, 2028. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in CHAMBERS County, Alabama:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

06/09/1998 12:30 REC FEE: $77.00 PAGE #: 0001 OF 0005
CHAMBERS COUNTY, AL JOHN T CROWDER - PROBATE JUDGE DOC #: 1998 2684

which has the address of 1102 ALEWINE DRIVE, VALLEY [Street] [City]

Alabama 36854 [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: EHA SA

06/09/1998 12:30 REC FEE: $77.00 PAGE #: 0002 OF 0005
CHAMBERS COUNTY, AL JOHN T CROWDER PROBATE JUDGE DOC #: 1998 2684

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost

Initials: EHA SA.

to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Initials: EHA SA





06/09/1998 12:30 REC FEE: $77.00 PAGE #: 0003 OF 0005
CHAMBERS COUNTY, AL JOHN T CROWDER PROBATE JUDGE DOC #: 1998 2684

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in CHAMBERS County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower waives all right of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Stephen L. Spence

Edward H. Alewine Sr. (Seal)
EDWARD H. ALEWINE SR. JR. -Borrower

Shelly M. Alewine (Seal)
SHELLY M. ALEWINE -Borrower

__________ (Seal) -Borrower

__________ (Seal) -Borrower

[Space Below This Line For Acknowledgment]

STATE OF ALABAMA, CHAMBERS County ss:

On this 23RD day of MAY 1998, I, O. WAYNE SPENCE, a Notary Public in and for said county and in said state, hereby certify that EDWARD H. ALEWINE SR. and SHELLY M. ALEWINE, whose name(s) IS signed to the foregoing conveyance, and who IS known to me, acknowledged before me that, being informed of the contents of the conveyance, T he Y executed the same voluntarily and as ____ act on the day the same bears date.

Given under my hand and seal of office this 23RD day of MAY 1998.

My Commission Expires:

O. WAYNE SPENCE
-NOTARY PUBLIC – OFFICIAL SEAL-
MUSCOGEE COUNTY, GA

My Commission Expires October 17, 2000

Notary Public O. WAYNE SPENCE



SIALC4 07/95

06/09/1998 12:30 REC FEE: $77.00 PAGE #: 0004 OF 0005
CHAMBERS COUNTY, AL JOHN T CROWDER - PROBATE JUDGE DOC #: 1998 2684

EXHIBIT "A"

COMMENCING AT THE NORTHWEST CORNER OF SECTION 29, TOWNSHIP 21 NORTH, RANGE 29 EAST, CHAMBERS COUNTY, ALABAMA; THENCE NORTH 85 DEGREES 56 MINUTES 15 SECONDS EAST 30.44 FEET; THENCE NORTH 86 DEGREES 59 MINUTES 31 SECONDS EAST 629.32 FEET; THENCE NORTH 86 DEGREES 54 MINUTES 16 SECONDS EAST 316.55 FEET TO THE NORTHWESTERLY R/W LINE OF OLD CHATTAHOOCHEE VALLEY RAILROAD BEDS THENCE LEAVING SAID R/W LINE SOUTH 30 DEGREES 37 MINUTES 29 SECONDS EAST 30.06 FEET TO THE SOUTHEASTERLY R/W LINE OF SAID OLD CHATTAHOOCHEE VALLEY RAILROAD BEDS SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE IN A NORTHEASTERLY AND SOUTHEASTERLY DIRECTION, ALONG SAID R/W LINE, THE COURSES OF WHICH ARE AS FOLLOWS: NORTH 62 DEGREES 62 MINUTES 49 SECONDS EAST 121.17 FEET; NORTH 78 DEGREES 01 MINUTE 08 SECONDS EAST 200.22 FEET; NORTH 87 DEGREES 27 MINUTES 32 SECONDS EAST 20.23 FEET; SOUTH 80 DEGREES 36 MINUTES 30 SECONDS EAST 401.38 FEET; SOUTH 88 DEGREES 07 MINUTES 00 SECONDS EAST 139.27 FEET TO THE CENTERLINE OF A CREEK; THENCE SOUTH 12 DEGREES 55 MINUTES 31 SECONDS WEST, ALONG SAID CENTERLINE 103.41 FEET; THENCE SOUTH 19 DEGREES 9 MINUTES 36 SECONDS WEST 48.79 FEET; THENCE LEAVING SAID CENTERLINE SOUTH 79 DEGREES 48 MINUTES 14 SECONDS WEST 1160.67 FEET TO THE SOUTHEASTERLY R/W LINE OF SAID OLD CHATTAHOOCHEE VALLEY RAILROAD BED; THENCE NORTH 47 DEGREES 55 MINUTES 58 SECONDS EAST, ALONG SAID R/W LINE 203.96 FEET; THENCE NORTH 50 DEGREES 06 MINUTES 14 SECONDS EAST 162.21 FEET; THENCE NORTH 55 DEGREES 42 MINUTES 30 SECONDS EAST 50.09 FEET TO THE TRUE POINT OF BEGINNING. SAID PARCEL OF LAND LYING IN SECTIONS 20 AND 29, TOWNSHIP 21 NORTH, RANGE 29 EAST, CHAMBERS COUNTY, ALABAMA, AND CONTAINING 3,000 ACRES, ACCORDING TO THAT CERTAIN SURVEY PREPARED FOR EDWARD H. ALEWINE, JR. AND SHELLY M. ALEWINE BY DAVID H. MILLER, REGISTERED SURVEYOR, ALA. REG. NO. 6259, DATED DECEMBER 8, 1992.

06/09/1998 12:30 REC FEE: $77.00 PAGE #: 0005 OF 0005
CHAMBERS COUNTY, AL JOHN T CROWDER - PROBATE JUDGE DOC #: 1998 2684

```
                          CUSTOMER ACCOUNT ACTIVITY STATEMENT         DATE 08/04/06
REQ BY ENW                                                                 PAGE    1

EDWARD H ALEWINE
SHELLY M ALEWINE
1102 ALEWINE DR
VALLEY                   AL 36854

LOAN NUMBER: 1099003191
********************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION -------------------------
  DATE         TOTAL        PRINCIPAL        LOAN         CURRENT
 PAYMENT       PAYMENT      & INTEREST     INTEREST      PRINCIPAL         ESCROW
  DUE          AMOUNT        PAYMENT         RATE         BALANCE          BALANCE
08-29-06         433.32        382.85     11.90000       35,352.39          596.82-
********************************************************************************

                    ACTIVITY FOR PERIOD 08/01/04 - 08/03/06
PROCESS   DUE     TRANSACTION                 TRANSACTION                EFFECTIVE DATE
 DATE     DATE    CODE                        DESCRIPTION                OF TRANSACTION
--------------------------------------------------------------------------------
TRANSACTION  PRIN. PAID/          ESCROW PAID/ ------------OTHER------------
   AMOUNT      BALANCE    INTEREST   BALANCE     AMOUNT  CODE/DESCRIPTION
--------------------------------------------------------------------------------
08-03-06  08-06  168  REPAY OF ESCROW ADVANCE
       0.00        0.00        0.00      8.00-      8.00
08-03-06  08-06  163  INS REFUND
       8.00        0.00        0.00      8.00
                                       596.82-  NEW PRINCIPAL/ESCROW BALANCES
08-01-06  07-06  168  REPAY OF ESCROW ADVANCE
       0.00        0.00        0.00      0.15-      0.15
08-01-06  07-06  174  PAYMENT                                            07-31-06
       0.00       31.96      350.89      0.15     383.00-
              35,352.39                604.82-  NEW PRINCIPAL/ESCROW BALANCES
07-31-06  07-06  172  PAYMENT
     383.00        0.00        0.00      0.00     383.00
07-20-06  07-06  132  LATE CHARGE ADJUSTMENT
       0.00        0.00        0.00      0.00      19.14 1 LATE CHARGE
07-20-06  06-06  168  REPAY OF ESCROW ADVANCE
       0.00        0.00        0.00      0.15-      0.15
07-20-06  06-06  174  PAYMENT                                            06-26-06
       0.00       31.64      351.21      0.15     383.00-
              35,384.35                604.97-  NEW PRINCIPAL/ESCROW BALANCES
07-20-06  06-06  132  LATE CHARGE ADJUSTMENT
       0.00        0.00        0.00      0.00      19.14 1 LATE CHARGE
07-10-06  06-06  152  LATE CHARGE ASSESSMENT
       0.00        0.00        0.00      0.00      19.14-1 LATE CHARGE
06-26-06  06-06  172  PAYMENT
     383.00        0.00        0.00      0.00     383.00
```

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY ENW

DATE 08/04/06
PAGE 2

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

ACTIVITY FOR PERIOD 08/01/04 - 08/03/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION | TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 06-23-06 | 06-06 | 132 | LATE CHARGE ADJUSTMENT | | 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | 1 LATE CHARGE |
| 06-23-06 | 05-06 | 168 | REPAY OF ESCROW ADVANCE | | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |
| 06-23-06 | 05-06 | 174 | PAYMENT | 04-26-06 | 0.00 | 31.33 | 351.52 | 0.15 | 383.00- | |
| | | | | | | 35,415.99 | | 605.12- | | NEW PRINCIPAL/ESCROW BALANCES |
| 06-09-06 | 05-06 | 152 | LATE CHARGE ASSESSMENT | | 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 05-24-06 | 05-06 | 132 | LATE CHARGE ADJUSTMENT | | 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | 1 LATE CHARGE |
| 24-06 | 04-06 | 168 | REPAY OF ESCROW ADVANCE | | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |
| 05-24-06 | 04-06 | 174 | PAYMENT | 04-26-06 | 0.00 | 31.02 | 351.83 | 0.15 | 383.00- | |
| | | | | | | 35,447.32 | | 605.27- | | NEW PRINCIPAL/ESCROW BALANCES |
| 05-24-06 | 04-06 | 172 | PAYMENT | | 383.00 | 0.00 | 0.00 | 0.00 | 383.00 | |
| 05-10-06 | 04-06 | 152 | LATE CHARGE ASSESSMENT | | 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 04-26-06 | 04-06 | 172 | PAYMENT | | 383.00 | 0.00 | 0.00 | 0.00 | 383.00 | |
| 04-05-06 | 03-06 | 173 | PAYMENT | 04-04-06 | 0.00 | 30.72 | 352.13 | 0.00 | 382.85- | |
| | | | | | | 35,478.34 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 04-04-06 | 03-06 | 168 | REPAY OF ESCROW ADVANCE | | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |
| 04-04-06 | 03-06 | 170 | BEG ESC DEPOSIT | | 0.00 | 0.00 | 0.00 | 0.15 | 0.15- | |
| | | | | | | | | 605.42- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-27-06 | 03-06 | 172 | PAYMENT | | 383.00 | 0.00 | 0.00 | 0.00 | 383.00 | |
| 03-14-06 | 03-06 | 132 | LATE CHARGE ADJUSTMENT | | 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | 1 LATE CHARGE |
| 03-14-06 | 02-06 | 168 | REPAY OF ESCROW ADVANCE | | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |

```
                     CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 08/04/06
REQ BY ENW                                                              PAGE    3

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

                  ACTIVITY FOR PERIOD 08/01/04 - 08/03/06
PROCESS   DUE     TRANSACTION             TRANSACTION                 EFFECTIVE DATE
 DATE     DATE    CODE                    DESCRIPTION                 OF TRANSACTION
-------------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/          ESCROW PAID/  ------------OTHER-------------
    AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------------
03-14-06  02-06  174  PAYMENT                                               01-24-06
        0.00        30.42     352.43      0.15    383.00-
               35,509.06                605.57-  NEW PRINCIPAL/ESCROW BALANCES
03-13-06  02-06  152  LATE CHARGE ASSESSMENT
        0.00         0.00       0.00      0.00      19.14-1 LATE CHARGE
02-27-06  02-06  132  LATE CHARGE ADJUSTMENT
        0.00         0.00       0.00      0.00      19.14 1 LATE CHARGE
02-27-06  01-06  168  REPAY OF ESCROW ADVANCE
        0.00         0.00       0.00     19.29-     19.29
02-27-06  01-06  174  PAYMENT                                               01-24-06
        0.00        30.12     352.73     19.29    402.14-
               35,539.48                605.72-  NEW PRINCIPAL/ESCROW BALANCES
02-27-06  01-06  172  PAYMENT
      383.00         0.00       0.00      0.00    383.00
02-27-06  01-06  147  PAYMT REVERSAL
        0.00         0.00       0.00      0.00      19.14-1 LATE CHARGE
                                                    19.14
02-09-06  01-06  152  LATE CHARGE ASSESSMENT
        0.00         0.00       0.00      0.00      19.14-1 LATE CHARGE
01-24-06  01-06  172  PAYMENT
      383.00         0.00       0.00      0.00    383.00
01-18-06  01-06  132  LATE CHARGE ADJUSTMENT
        0.00         0.00       0.00      0.00      19.14 1 LATE CHARGE
01-18-06  12-05  168  REPAY OF ESCROW ADVANCE
        0.00         0.00       0.00      0.15-      0.15
01-18-06  12-05  174  PAYMENT                                               12-27-05
        0.00        29.82     353.03      0.15    383.00-
               35,569.60                625.01-  NEW PRINCIPAL/ESCROW BALANCES
01-09-06  12-05  152  LATE CHARGE ASSESSMENT
        0.00         0.00       0.00      0.00      19.14-1 LATE CHARGE
12-27-05  12-05  172  PAYMENT
      383.00         0.00       0.00      0.00    383.00
11-29-05  11-05  168  REPAY OF ESCROW ADVANCE
        0.00         0.00       0.00      0.15-      0.15
11-29-05  11-05  174  PAYMENT                                               11-28-05
        0.00        29.53     353.32      0.15    383.00-
               35,599.42                625.16-  NEW PRINCIPAL/ESCROW BALANCES
```

REQ BY ENW

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 08/04/06
PAGE 4

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

ACTIVITY FOR PERIOD 08/01/04 - 08/03/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 11-28-05 | 11-05 | 172 | PAYMENT | 383.00 | 0.00 | 0.00 | 0.00 | 383.00 | | |
| 10-28-05 | 10-05 | 168 | REPAY OF ESCROW ADVANCE | 0.00 | 0.00 | 0.00 | 19.29- | 19.29 | | |
| 10-28-05 | 10-05 | 174 | PAYMENT | 0.00 | 29.24 | 353.61 | 19.29 | 402.14- | | 10-27-05 |
| | | | | | 35,628.95 | | 625.31- | | NEW PRINCIPAL/ESCROW BALANCES | |
| 10-27-05 | 10-05 | 172 | PAYMENT | 402.14 | 0.00 | 0.00 | 0.00 | 402.14 | | |
| 10-11-05 | 10-05 | 161 | ESCROW ADVANCE | 8.00 | 0.00 | 0.00 | 8.00 | | | |
| [illegible]10-05 | 08-05 | 351 | HAZ INS | 8.00- | 0.00 | 0.00 | 8.00- | | | |
| | | | | | | | 644.60- | | NEW PRINCIPAL/ESCROW BALANCES | |
| 09-26-05 | 09-05 | 168 | REPAY OF ESCROW ADVANCE | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | | |
| 09-26-05 | 09-05 | 172 | PAYMENT | 383.00 | 28.95 | 353.90 | 0.15 | | | |
| | | | | | 35,658.19 | | 636.60- | | NEW PRINCIPAL/ESCROW BALANCES | |
| 09-22-05 | 08-05 | 173 | PAYMENT | 0.00 | 28.67 | 354.18 | 0.00 | 0.15 | 1 LATE CHARGE | |
| | | | | | | | | 383.00- | | |
| | | | | | 35,687.14 | | | | NEW PRINCIPAL/ESCROW BALANCES | |
| 09-14-05 | 08-05 | 172 | PAYMENT | 83.00 | 0.00 | 0.00 | 0.00 | 83.00 | | |
| 09-12-05 | 08-05 | 147 | PAYMT REVERSAL | 0.00 | 0.00 | 0.00 | 0.00 | 300.00 | | |
| 09-12-05 | 08-05 | 147 | PAYMT REVERSAL | 0.00 | 300.00- | 0.00 | 0.00 | | | |
| | | | | | 35,715.81 | | | | NEW PRINCIPAL/ESCROW BALANCES | |
| 09-09-05 | 08-05 | 152 | LATE CHARGE ASSESSMENT | 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE | |
| 08-29-05 | 08-05 | 175 | PRINCIPAL PAYMENT | 0.00 | 300.00 | 0.00 | 0.00 | 300.00- | | 08-26-05 |
| | | | | | 35,415.81 | | | | NEW PRINCIPAL/ESCROW BALANCES | |
| 08-29-05 | 00-00 | 632 | STATUTORY EXPENSES | 58.63 | 0.00 | 0.00 | 0.00 | | | |

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 08/04/06
PAGE 5

REQ BY ENW

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

ACTIVITY FOR PERIOD 08/01/04 - 08/03/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|
| 08-29-05 | 00-00 | 630 | ATTORNEY ADVANCES | 2,251.00 | 0.00 | 0.00 | 0.00 | | |
| 08-26-05 | 08-05 | 172 | PAYMENT | 300.00 | 0.00 | 0.00 | 0.00 | 300.00 | |
| 08-04-05 | 00-00 | 632 | STATUTORY EXPENSES | 7.37 | 0.00 | 0.00 | 0.00 | | |
| 08-04-05 | 00-00 | 630 | ATTORNEY ADVANCES | 1,240.00 | 0.00 | 0.00 | 0.00 | | |
| 07-29-05 | 07-05 | 168 | REPAY OF ESCROW ADVANCE | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |
| [illegible]-29-05 | 07-05 | 172 | PAYMENT | 383.00 | 28.39 | 354.46 | 0.15 | | |
| | | | | | 35,715.81 | | 636.75- | | NEW PRINCIPAL/ESCROW BALANCES |
| 07-28-05 | 06-05 | 173 | PAYMENT | 0.00 | 28.11 | 354.74 | 0.00 | | |
| | | | | | 35,744.20 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 07-28-05 | 05-05 | 173 | PAYMENT | 765.70 | 27.83 | 355.02 | 0.00 | | |
| | | | | | 35,772.31 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 07-28-05 | 00-00 | 766 | MISC. REPAYMENT | 2,978.16 | 0.00 | 0.00 | 0.00 | | |
| 07-22-05 | 00-00 | 630 | ATTORNEY ADVANCES | 11,243.86 | 0.00 | 0.00 | 0.00 | | |
| 07-22-05 | 05-05 | 132 | LATE CHARGE ADJUSTMENT | 0.00 | 0.00 | 0.00 | 0.00 | 984.11 | 1 LATE CHARGE |
| 07-11-05 | 05-05 | 152 | LATE CHARGE ASSESSMENT | 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 06-27-05 | 04-05 | 168 | REPAY OF ESCROW ADVANCE | 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | |
| 06-27-05 | 04-05 | 172 | PAYMENT | 383.00 | 27.56 | 355.29 | 0.15 | | |
| | | | | | 35,800.14 | | 636.90- | | NEW PRINCIPAL/ESCROW BALANCES |
| 06-27-05 | 00-00 | 632 | STATUTORY EXPENSES | 4.11 | 0.00 | 0.00 | 0.00 | | |
| 06-27-05 | 00-00 | 630 | ATTORNEY ADVANCES | 183.00 | 0.00 | 0.00 | 0.00 | | |

REQ BY ENW
CUSTOMER ACCOUNT ACTIVITY STATEMENT
DATE 08/04/06
PAGE 6

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

ACTIVITY FOR PERIOD 08/01/04 - 08/03/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|---|
| **TRANSACTION AMOUNT** | **PRIN. PAID/ BALANCE** | **INTEREST** | **ESCROW PAID/ BALANCE** | **OTHER AMOUNT** | **OTHER CODE/DESCRIPTION** | | |
| 06-09-05 | 04-05 | 152 | LATE CHARGE ASSESSMENT | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | -1 LATE CHARGE | | |
| 05-26-05 | 03-05 | 168 | REPAY OF ESCROW ADVANCE | | | | |
| 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | | | |
| 05-26-05 | 03-05 | 172 | PAYMENT | | | | |
| 383.00 | 27.29 | 355.56 | 0.15 | | | | |
| | 35,827.70 | | 637.05- | | NEW PRINCIPAL/ESCROW BALANCES | | |
| 05-10-05 | 03-05 | 152 | LATE CHARGE ASSESSMENT | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | -1 LATE CHARGE | | |
| 04-26-05 | 02-05 | 168 | REPAY OF ESCROW ADVANCE | | | | |
| 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | | | |
| 26-05 | 02-05 | 172 | PAYMENT | | | | |
| 383.00 | 27.02 | 355.83 | 0.15 | | | | |
| | 35,854.99 | | 637.20- | | NEW PRINCIPAL/ESCROW BALANCES | | |
| 04-21-05 | 00-00 | 630 | ATTORNEY ADVANCES | | | | |
| 669.50 | 0.00 | 0.00 | 0.00 | | | | |
| 04-11-05 | 02-05 | 152 | LATE CHARGE ASSESSMENT | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | -1 LATE CHARGE | | |
| 03-30-05 | 01-05 | 168 | REPAY OF ESCROW ADVANCE | | | | |
| 0.00 | 0.00 | 0.00 | 0.15- | 0.15 | | | |
| 03-30-05 | 01-05 | 172 | PAYMENT | | | | |
| 383.00 | 26.75 | 356.10 | 0.15 | | | | |
| | 35,882.01 | | 637.35- | | NEW PRINCIPAL/ESCROW BALANCES | | |
| 03-17-05 | 00-00 | 630 | ATTORNEY ADVANCES | | | | |
| 0.80 | 0.00 | 0.00 | 0.00 | | | | |
| 03-17-05 | 00-00 | 630 | ATTORNEY ADVANCES | | | | |
| 1,677.75 | 0.00 | 0.00 | 0.00 | | | | |
| 03-16-05 | 00-00 | 633 | MISC. F/C AND B/R EXPENSES | | | | |
| 125.00 | 0.00 | 0.00 | 0.00 | | | | |
| 03-15-05 | 12-04 | 173 | PAYMENT | | | | 03-14-05 |
| 383.00 | 26.49 | 356.36 | 0.00 | 0.15 | 1 LATE CHARGE | | |
| | 35,908.76 | | | | NEW PRINCIPAL/ESCROW BALANCES | | |
| 03-14-05 | 12-04 | 152 | LATE CHARGE ASSESSMENT | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | -1 LATE CHARGE | | |
| 02-09-05 | 12-04 | 152 | LATE CHARGE ASSESSMENT | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14 | -1 LATE CHARGE | | |

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY ENW

DATE 08/04/06
PAGE 7

EDWARD H ALEWINE
LOAN NUMBER: 1099003191

ACTIVITY FOR PERIOD 08/01/04 - 08/03/06

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 01-31-05 11-04 173 PAYMENT | | | | | |
| 383.00 | 26.23 | 356.62 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 35,935.25 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 01-10-05 11-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 12-30-04 10-04 173 PAYMENT | | | | | |
| 383.00 | 25.97 | 356.88 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 35,961.48 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 12-10-04 10-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| [illegible]-29-04 09-04 173 PAYMENT | | | | | |
| 383.00 | 25.72 | 357.13 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 35,987.45 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 11-09-04 09-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 10-29-04 08-04 173 PAYMENT | | | | | |
| 383.00 | 25.47 | 357.38 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 36,013.17 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 10-11-04 08-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 09-28-04 07-04 173 PAYMENT | | | | | |
| 383.00 | 25.22 | 357.63 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 36,038.64 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 09-09-04 07-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |
| 09-01-04 06-04 173 PAYMENT | | | | | |
| 383.00 | 24.97 | 357.88 | 0.00 | 0.15 | 1 LATE CHARGE |
| | 36,063.86 | | | | NEW PRINCIPAL/ESCROW BALANCES |
| 08-31-04 00-00 633 MISC. F/C AND B/R EXPENSES | | | | | |
| 125.00 | 0.00 | 0.00 | 0.00 | | |
| 08-09-04 06-04 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 19.14- | 1 LATE CHARGE |