IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

EDWARD H. ALEWINE, *et al.*,    )
                       )
     Plaintiffs,        )
                       )
v.                    )     Case No. 3:06cv886-MHT
                       )
AMERICA'S SERVICING COMPANY,)
                       )
     Defendant.       )

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, America's Servicing Company ("ASC"), and submits this brief in response to the motion for partial summary judgment filed by Plaintiffs, Edward H. and Shelly M. Alewine ("Plaintiffs"):

## I. STATEMENT OF FACTS

1.    Pursuant to a Note dated May 23, 1998 (the "Note"), Morcap, Inc. ("MORCAP") made a loan to Plaintiffs in the original principal amount of $37,500.  (*See* Note contained in collective Exhibit 10 to Shanabrook Deposition. Shanabrook Deposition is attached to Defendant's Evidentiary Submission as **Exhibit A**).

2.    Pursuant to a Mortgage dated May 23, 1998 (the "Mortgage"), Plaintiffs granted MORCAP a mortgage against their home in Valley, Alabama (the "Property").  (*See* Mortgage contained in collective Exhibit 10 to Shanabrook

Deposition).

3.    The loan evidenced by the Note and Mortgage shall be referred to herein, from time to time, as the "Mortgage Loan."

4.    Plaintiffs chose not to establish an escrow account for the Mortgage Loan to pay the taxes on and insurance for the Property.  (Edward Alewine Depo. at 19-20.  Edward Alewine Deposition is attached to Defendant's Evidentiary Submission as **Exhibit B**).  Plaintiffs paid the taxes and insurance themselves. (*Id.*).  Taxes and insurance were not, therefore, included in the Mortgage Loan payments.

5.    On or about December 2, 1999, Plaintiffs filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court").  A true and correct copy of the docket sheet, downloaded on the "PACER" system, relating to Plaintiffs' bankruptcy case is the Defendant's Evidentiary Submission as **Exhibit C**.

6.    On February 14, 2000, the Bankruptcy Court confirmed Plaintiffs' Chapter 13 Plan, which permitted Plaintiffs to retain the Property and to continue making the payments due under the Mortgage Loan.  (*Id.*; Shelly Alewine Depo. at 25-26.  Shelly Alewine Deposition is attached as **Exhibit D** to Defendant's Evidentiary Submission.).

2

7.    In December of 2000, it appears that Wells Fargo may have filed a motion for relief from the automatic stay (the "Motion for Relief") in the Bankruptcy Court to obtain permission to foreclose the Mortgage based upon Plaintiffs' failure to make the payments due under the Mortgage Loan.[1]   (*See* "Motion for Termination of Automatic Stay to Permit Foreclosure of Real Estate Mortgage" attached as Exhibit 11 to Shanabrook Deposition).   Based upon the allegations made in the Motion for Relief, the holder of the Mortgage <u>at that time</u> must have been of the opinion that the Mortgage was in default.  (*Id.*).

8.    However, after the bankruptcy filing, Plaintiffs made the payments due under the Mortgage Loan and remained current on their payments.  (Edward Alewine Depo. at 64;  Shelly Alewine Depo. at 26-27).

9.    Prior to November 1, 2002, Ocwen Federal Bank FSH ("Ocwen") assumed the responsibility for servicing the Mortgage Loan.  (*See discussion infra*).

10.    Effective November 1, 2002, Ocwen transferred the responsibility for servicing the Mortgage Loan to Defendant ASC.  (*See* Exhibit 8 - "Notice of Assignment, Sale or Transfer of Servicing Rights" – to Shanabrook Deposition).

---

[1]   Interestingly, there does not appear to be a docket entry on the online docket corresponding to the Motion for Relief.  (*See* Exhibit A).  In addition, it appears that the Motion for Relief was filed.  On behalf of the holder of the Mortgage, Wells Fargo Bank Minnesota, and not on behalf of the servicer of the Mortgage, Ocwen, as one might expect.

3

11.    Plaintiffs were duly notified of the assignment of the Mortgage Loan to ASC.  (*Id.*; Shelly Alewine Depo. at 28).

12.    The Mortgage Loan was not in default at the time that it was assigned to ASC in November of 2002.  (*See* Shanabrook Affidavit at 4; Edward Alewine Depo. at 64; Shelly Alewine Depo. at 26-27.  Cindy Shanabrook Affidavit is attached to Defendant's Evidentiary Submission as **Exhibit E**).

13.    There was a dispute between ASC and Plaintiffs in the year 2005 related to the servicing of the loan.  (*See* Edward Alewine Depo. at 11-14). Plaintiffs filed a civil action against ASC in the United Stated District Court of the Middle District of Alabama, Eastern Division, styled *Edward H. Alewine and Shelly M. Alewine v. America's Servicing Company*, Case No. 3:05-CV-16-C.  The dispute was settled pursuant to a Confidential Settlement Agreement and Release, executed in July of 2005 (the "Settlement Agreement").  (*See* Edward Alewine Depo. at 16; Shelly Alewine Depo. at 12).

14.    All parties complied with their obligations under the Settlement Agreement.  (*See* Edward Alewine Depo. at 16).

15.    Following the resolution of the lawsuit, ASC made an adjustment in the amount of the payments due under the Mortgage Loan to compensate for the escrow balance.  (Edward Alewine Depo. at 17, 34-36).  This was the first time that any attempt was made to collect the escrow balance.  (*Id.*).  By letters of July

4

18, 2005 and March 30, 2006, ASC notified Plaintiffs of the existence of the escrow balance and of the adjustment in the amount of the monthly payments. (*See* letters contained in collective Exhibit 9 to Shanabrook Deposition;  Edward Alewine Depo. at 18).  This was the first time ASC addressed the forced-placed insurance charges with Plaintiffs, ASC did not make any effort to collect the charges for the force-placed insurance prior to 2005.  (Edward Alewine Depo. at 60).

16.     Plaintiffs informed ASC that they had insurance for the Property. (Edward Alewine Depo. at 19).   However, as set forth herein, the proof of insurance that Plaintiffs provided was for the wrong period of time.   (*See discussion infra.*).  Plaintiffs had proof that the Property was insured during 2005 and 2006.  (*Id.*).  However, the escrow balance related to charges for insurance for the period beginning August 3, 2000 and ending August 3, 2001.  (*See discussion infra*).

17.     On October 3, 2005, Plaintiffs, by and through their attorney Nick Wooten, Esq., sent a letter to ASC that purported to be a "qualified written request pursuant to RESPA (section 2605(e))").  (*See* Exhibit 1 to Shanabrook Deposition). The letter requested ASC to provide various items of information, including an explanation of why ASC contended there was a problem with the insurance on the loan.  (*Id.*).

B JHW 756553 v4
2780973-000281 8/31/2007

18.    Plaintiffs did not do anything in connection with the preparation of the October 3, 2005 letter that cost them money.  (Edward Alewine Depo. at 40). Plaintiffs did not have any out-of-pocket expenses after October 3, 2005.  (Edward Alewine Depo. at 61).  Plaintiffs have not paid any attorney's fees relating to this letter or otherwise.  (Edward Alewine Depo. 64-65).

19.    By letter of August 7, 2006, ASC provided the information requested. (*See* Exhibit 9 to Shanabrook Deposition).  ASC's letter included copies of the July 18, 2005 and March 30, 2006 correspondence related to the force-placed insurance, a copy of the Mortgage, and a copy of the transaction history.

20.    Before sending the August 7, 2006 letter, ASC researched the escrow charges, by email correspondence with Ocwen, which was the servicer on the account at the time the charges were made.  A true and correct copy of the relevant email correspondence is attached to Defendant's Evidentiary Submission as **Exhibit E**.

21.    The letter that ASC sent to Plaintiffs was very specific with regard to Plaintiffs' request for information about the force-placed insurance.  (*See* Exhibit 9 to Shanabrook Deposition).  ASC informed Plaintiffs that there was a $323.00 charge for force-placed insurance on October 25, 2000 for the period beginning August 3, 2000 and ending August 3, 2001, and a charge of $314.50 on August 8, 2001 for force-placed insurance for the period beginning August 3, 2001 and

6

ending August 3, 2002.  (*Id.*)  The letter went on to state that:

> An escrow account is not currently in effect for the payment of property taxes and insurance for this loan.  However, the escrow advance balance remains due, as reflected in the enclosed Mortgage document and communicated in the correspondence issued to the above referenced mortgagors on July 18, 2005 and March 30, 2006, respectively.  **If evidence of existing insurance coverage for the time period of August 3, 2000 through August 3, 2002 is available, please contact ASC.  Once this documentation is received and reviewed, we will work with the previous mortgage company, Ocwen Federal Bank, to obtain a refund of the necessary lender placed insurance premiums that were advanced from the loan. Please be assured, if the refund amount exceeds the advance balance, the excess funds will be refunded to the mortgagors.**

(*Id.*).

22.    There is no evidence that ASC had any information that established, or that tended to establish, that Plaintiffs actually had insurance on the Property during the relevant time periods.  (*See* Edward Alewine Depo. at 53).  Plaintiffs have no memory of disputing the force placed insurance that was in effect in 2000 and 2001.  (Edward Alewine Depo. at 53-54).  No proof of insurance was provided for this period of time.  (Edward Alewine Depo. at 55).

23.    However, it now appears that Plaintiffs did have information that established that Plaintiffs had the required insurance coverage for the Property for the relevant time periods.  (Edward Alewine Depo. at 55-56).  This information, however, was not given to Ocwen.  (*Id.*).

24.    This information was produced to ASC during the course of discovery

in this case; but, it was not provided prior to the filing of the lawsuit.  (Edward Alewine Depo at 71).  ASC discovered the existence of the insurance coverage for the first time during the course of preparing for ASC's deposition.  (*See* Shanabrook Affidavit at 6).

25.     Nonetheless, despite the fact that Plaintiffs had the insurance information in their possession, Plaintiffs did not provide the insurance information to ASC.  (Edward Alewine Depo. at 56-57; Shelly Alewine Depo. at 33).

26.     Had Plaintiffs provided ASC with information that established that the forced placed insurance was not necessary, ASC could have addressed the forced placed insurance charges.  (Shanabrook Affidavit at 5).

27.     Had Plaintiffs read ASC's letter of August 7, 2006, they would have understood that ASC needed proof of insurance for 2000 and 2001.  (Edward Alewine Depo. at 73).  Had they known that ASC needed proof of insurance for 2000 and 2001, they would have provided it.  (Shelly Alewine Depo. at 16).

## II. ARGUMENT

### A.     Although ASC Was Late in Acknowledging and Responding to Plaintiffs' Inquiry, ASC Otherwise Complied With RESPA.

Plaintiffs are not entitled to summary judgment against ASC on their Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605(e) ("RESPA") claim. Plaintiffs' claim: (1) that ACS failed to acknowledge and respond in a timely

manner to Plaintiffs' October 3, 2005 request for information; and, (2) that ACS failed to make appropriate corrections to Plaintiffs' account.  As set forth herein, Plaintiffs' first claim must fail because, although ACS was not timely in responding to Plaintiffs' inquiry, there is substantial evidence that Plaintiffs' did not suffer any damages.  Plaintiffs' second claim must fail because Plaintiffs failed to provide ASC with information, which was available only to Plaintiffs, that ASC had to have to make the requested corrections to Plaintiffs' account.

RESPA provides that upon receiving a qualified written request from a borrower a loan servicer must send notice of receipt of such request and take certain actions within a prescribed period of time.  12 U.S.C. § 2605(e)(1)(A) and (e)(2).  In determining whether a defendant has violated these requirements, a court must consider:  (a) whether Plaintiffs sent any qualified written requests to ASC; (b) whether ASC properly sent notice of receipt of the qualified written request to Plaintiffs; (c) whether ASC took action with respect to such qualified written request; and (d) whether Plaintiffs suffered actual damages as a result of any alleged RESPA violation.  *See Rawlings v. Dovenmuehle Mortgage*, 64 F. Supp. 2d 1145, 1161 (M.D. Ala. 1999) (discussing loan servicer's obligation under § 2605(e)(1)(A) and (e)(2)).

In this case, it is undisputed that Plaintiffs sent a qualified written request to ASC, and that ASC sent notice of receipt of the inquiry to Plaintiffs.  Nonetheless,

it is also true that ASC was late in acknowledging receipt of the inquiry. Under Section 2605(e)(1), ASC had 20 days from receipt of the October 3, 2005 inquiry to provide a written response acknowledging receipt of the correspondence. ASC did not acknowledge receipt of the inquiry until July 20, 2006, outside the 20 day time limit.

It also is undisputed that ASC made a response to Plaintiffs' inquiry, and that the response was late. Under Section 2605(e)(2), ASC had 60 days from receipt of the October 3, 2005 to make its response. However, ASC did not take action on the inquiry until August 7, 2006, more than 60 days from ASC's receipt of the inquiry.

Given these facts, it is possible to narrow down the legal issues presented by this case. It is undisputed: (a) that Plaintiffs send ASC a qualified written request; (b) that ASC acknowledged the request, outside the 20 day time period; and (c) that ASC made a response to Plaintiffs' inquiry, outside the 60 day time period. However, it is disputed: (1) whether Plaintiffs suffered any actual damages as a result of the late acknowledgment or the lateness of the response; and, (2) whether the action ASC took in response to Plaintiffs' inquiry complied with the requirements of RESPA.

1.    **ASC Took Appropriate Action With Respect to Plaintiffs' Inquiry.**

There is substantial evidence in this case that ASC took appropriate action in response to Plaintiffs' qualified written request.  Plaintiffs made an inquiry about the charges on their account for force-placed insurance.  ASC responded in a letter that provided detailed information to Plaintiffs about why insurance was force-placed and advised Plaintiffs that ASC would cooperate in obtaining a refund of the insurance premiums if Plaintiffs would provide proof of insurance.  Plaintiffs, however, did not provide proof of insurance, and ASC was not, therefore, able to make the requested adjustments to Plaintiffs' account.

ASC's actions with respect to Plaintiffs' inquiry complied with RESPA.  In this regard, Section 2605(e)(2) provides:

**(2)  Action with respect to inquiry**

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall -

**(A)**    make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

**(B)**    after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2) (emphasis added). Subsection (C) does not apply in this case. ASC did not take the position that Plaintiffs needed to contact a third-party to obtain the necessary information. Therefore, the question is whether ASC satisfied the requirements of subsection (A) or (B).

There is substantial evidence in this case that ASC satisfied the requirements of Section 2605(e)(2)(B). Plaintiffs made a qualified written request to ASC asking for information relating to force-placed insurance. ASC responded that there were charges for force-placed insurance, for the period beginning August 3, 2000 and ending August 3, 2002. This response satisfied the requirements of Section 2605(e)(2)(B)(i). As a matter of form, the response also provided the name and telephone number of an individual with ASC who could answer questions about the account, in compliance with the requirements of Section 2605(e)(2)(B)(ii).

12

Plaintiffs argue that ASC had an obligation to make appropriate corrections to Plaintiffs' account, under Section 2605(e)(2)(A).  This claim is based upon the fact that Plaintiffs had proof that the Property was insured, in compliance with the loan documents, for the period beginning August 3, 2000 and ending August 2, 2002.

This argument must fail, however, because while Plaintiffs may have had the required insurance, Plaintiffs did not provide proof of insurance to ASC.  Without such information, ASC did not have the ability to obtain a refund of the force-placed insurance premiums, much less to make an adjustment to the balance due on Plaintiffs' account.

2.    **Plaintiffs Did Not Suffer any Damages as a Result of any Delay by ASC in Acknowledging and Responding to Plaintiffs' Inquiry.**

There is also substantial evidence in this case that Plaintiffs due not suffer any damages as a result of the delay by ASC in acknowledging and responding to Plaintiffs' qualified request for information.

With regard to damages, Section 2605(f) provides, in relevant part, that:

**(f)    Damages and costs**

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

**(1)    Individuals**

In the case of any action by an individual, an amount equal to the sum of--

> **(A)**    any actual damages to the borrower as a result of the failure; and
>
> **(B)**    any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605.  Plaintiffs have not asked for summary judgment that there was a pattern or practice of noncompliance under subsection (B).  Therefore, the question is whether Plaintiffs suffered any actual damages under subsection (A).

In this case, there is no evidence that Plaintiffs suffered any damages as a result of the delay by ASC in responding to Plaintiffs' inquiry.  To make such a showing, Plaintiffs would have to show that they suffered actual damages as a result of the delay that occurred between the date of Plaintiffs' October 3, 2005 inquiry and ASC's response.

Plaintiffs cannot make such a showing.  In fact, Plaintiffs have admitted that they did not incur any costs in connection with the October 3, 2005 letter, or any time thereafter, as a result of ASC's failure to respond in a timely manner.  (*See* Paragraph 18 *supra*).

**B.    The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCP") Does Not Apply Because the Loan Was Not in Default When ASC Became the Loan Servicer.**

Plaintiffs also seek summary judgment, partial summary judgment, that ASC is a debt collector within the meaning of the Fair Debt Collection Practices Act, 15

14

U.S.C. § 1692 (the "FDCPA"). Plaintiffs are not entitled to summary judgment on this issue.

The FDCPA distinguishes between "debt collectors" and "creditors." Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," S. Rep. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the FDCPA. Instead, the FDCPA is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *See id.* In general, a creditor is broadly defined as one who "offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4), whereas a debt collector is one who attempts to collect debts "owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

For purposes of applying the FDCPA to a particular debt, these two categories - debt collectors and creditors - are mutually exclusive. However, for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector. To

15

distinguish between these two possibilities, the FDCPA uses the status of the debt at the time of the assignment:

> **(6)** The term "debt collector" means any person who ... regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... The term does not include--

> **(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ...

> ***(iii) concerns a debt which was not in default at the time it was obtained by such person.***

15 U.S.C. § 1692(a) (emphasis added).   In other words, the Act treats assignees as debt collectors only if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.  *See Brumberger v. Sallie Mae Serv. Corp.,* 84 Fed. App. 458 (5th Cir. 2004); *see also Dawson v. Dovenmuehle Mortgage, Inc*., 2002 WL 501499 (E.D. Pa. 2002).

In this case, ASC became the servicer of the Mortgage Loan on November 1, 2002, Plaintiffs' claim that the loan was in default is based on: (a) Plaintiffs 1999 bankruptcy filing; and, (b) the December 2000 motion for relief from the automatic stay.

These facts, however, do not establish that the loan was default.  To begin with, bankruptcy is not a default under Plaintiffs' loan documents.   More importantly, regardless of whether the loan was in default in December of 2000, when the motion for relief was filed, it is clear that the loan was not in default,

16

<u>nearly two years later</u>, when ASC became the servicer.  Indeed, it is undisputed that Plaintiffs were making the payments due under the Mortgage Loan outside the Plan.  Plaintiffs themselves insist that they were not in default, and ASC did not take the position that they were in default.

Plaintiffs cite a number of cases in support of their argument that the debt in this case was in default, including *Prince v. NCO Financial Services, Inc.*, 346 F. Supp. 2d 744 (E.D. Pa. 2004); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003); *Skerry v. Mass. Higher Educ. Ass. Corp.*, 73 F. Supp. 2d 47 (D. Mass. 1999); *Bailey V. Security Nat'l Serv. Corp.*, 154 F.3d 384 (7th Cir. 1998). These cases, however, do not provide adequate support of Plaintiffs' position.

In fact, the majority of the cases Plaintiffs cite support ASC's position that the loan was not in default for purposes of the FDCPA.  In *Prince v. NCO Financial Services, Inc.*, 346 F. Supp. 2d 744 (E.D. Pa. 2004), the district court rejected plaintiffs' unsupported allegation that the loan was in default and granted summary judgment that the defendant was not a "debt collector" within the meaning of the FDCPA, because the plaintiff was not in default of the terms of the creditor's standard customer agreement.  In *Skerry v. Mass. Higher Educ. Ass. Corp.*, 73 F. Supp. 2d 47 (D. Mass. 1999), the district court granted summary judgment in favor of the defendant on a FDCPA claim because, although the debt was delinquent, the mandatory 180 day period grace period that had to pass prior to

the declaration of a default had not expired.  Moreover, in *Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384 (7th Cir. 1998), the Seventh Circuit Court of Appeals affirmed summary judgment granted in favor of the creditor on the grounds that a debtor, who was performing under a payment plan for a loan that had previously been in default, was not in default, for purposes of the FDCPA.

Granted, in *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003), the Seventh Circuit held that a debt may be in default, for purposes of the FDCPA, when a creditor takes the position that the debt is in default, even if the creditor is mistaken.  However, *Schlosser* is easily distinguishable from this case, where it is undisputed that ASC was not of the opinion that the Mortgage Loan was in default when ASC assumed responsibility for servicing the loan in November of 2002.

## C.    <u>ASC Did Not Violate the Fair Debt Collection Practices Act.</u>

Plaintiffs also seek summary judgment that ASC violated the FDCPA by: (1) misrepresenting the status of the debt; and, (2) using an assumed name.  For many of the same reasons that Plaintiffs' other claims are defective, this claim also must fail.

Section 1692e(2)(A) does prohibit the false representation of "the character, amount, or legal status of any debt" by a debt collector.  However, in this case, there is no evidence that ASC misrepresented the status of the debt.  ASC

B JHW 756553 v4
2780973-000281 8/31/2007

attempted to collect charges for force-placed insurance because Plaintiffs failed to provide proof of insurance for the relevant time period.

In addition, the FDCPA contains a "bona fide error" defense for unintentional violations. Section 1692k(c) provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In this case, there is not serious question that, if there was an error on ASC's part, the error fits within the "bona fide error" exception. ASC, in response to Plaintiffs' RESPA request, made contain with the prior servicer and determined that there were charges for force-placed insurance. Then, in accordance with its RESPA procedures, wrote Plaintiffs a letter explaining the situation. There was, of course, and error, but the reason there was an error is that Plaintiffs failed to provide ASC the information necessary to correct the mistake.

Finally, there is no evidence that ASC used an assumed name. The correspondence in this case clearly shows that "America's Servicing Company" is a trade name. Plaintiffs have cited to no authority that the use of a trade name can, under any circumstances, much less the circumstances presented by this case, violate the FDCPA.

19

### III. CONCLUSION

Based on the foregoing, ASC respectfully submits that Plaintiffs' Motion for Summary Judgment is due to be denied.

/s/ D. Keith Andress
D. KEITH ANDRESS
JAMES H. WHITE, IV

Attorneys for America's Servicing Company

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Ste. 1600
Birmingham, Alabama  35203
(205) 328-0480 – telephone
(205) 322-8007 – facsimile
kandress@bakerdonelson.com
jwhite@bakerdonelson.com

B JHW 756553 v4
2780973-000281 8/31/2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, the foregoing has been served upon the following counsel of record by electronic mail via the Court's cm/ecf system:

Mr. Nicholas H. Wooten
Mr. Anjali Kamath
Wooten Law Firm, P.C.
P.O. Drawer 290
Lafayette, AL  36862


/s/ James H. White
Of Counsel

21