## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| EDWARD H. ALEWINE, and ) | |
| SHELLY M. ALEWINE, ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| v. ) | CASE NO.: 3:06cv886-MHT |
| ) | |
| AMERICA'S SERVICING COMPANY, ) | |
| ) | |
| DEFENDANT. ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTION FOR REFERRAL TO BANKRUPTCY COURT

COMES NOW the Defendant, America's Servicing Company ("ASC"), and responds to Plaintiffs' Motion for Referral to Bankruptcy Court as follows:

### I.    INTRODUCTION

Plaintiffs' Motion for Referral to Bankruptcy Court is based upon the mistaken assumption that an automatic stay was actually in effect at the time ASC took action to collect the charges at issue. Because the stay was not in effect at the time ASC attempted to collected the charges, Plaintiffs' underlying claim is fatally deficient. Plaintiffs' request for referral to the Bankruptcy Court (as herein defined) is also deficient as a matter of procedure, for the reasons more fully set forth herein.

## II.    STATEMENT OF FACTS

1.    Pursuant to a Note dated May 23, 1998 (the "Note"), Morcap, Inc. ("MORCAP") made a loan to Plaintiffs in the original principal amount of $37,500 (the "Loan").[1] Upon information and belief, the Loan was secured only by a mortgage against Plaintiffs' principal residence in Valley, Alabama (the "Property") pursuant to a mortgage dated May 23, 1998 (the "Mortgage").[2]

2.    On December 2, 1999 (the "Petition Date"), Plaintiffs filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Case"), 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court").

3.    On the Petition Date, the automatic stay imposed by Section 362 of the Bankruptcy Code went into effect by operation of federal bankruptcy law.

4.    On February 14, 2000, the Bankruptcy Court confirmed Plaintiffs' Chapter 13 Plan (the "Confirmation Date"), which permitted Plaintiffs to retain the Property and to continue making the payments required under the Loan.[3] Plaintiffs commenced and remained current on their payments after the Petition Date.[4]

---

[1] *See* Note contained in collective Exhibit 10 to Deposition of Cindy Shanabrook. A copy of the Deposition of Cindy Shanabrook and all of the exhibits thereto are contained in the Evidentiary Submission Plaintiffs filed in support of their Motion for Summary Judgment. [See Docket Nos. 21-32].

[2] *See* Mortgage contained in collective Exhibit 10 to Deposition of Cindy Shanabrook.

[3] Deposition of Shelly Alewine at 25-26. Copies of the Deposition of Shelly Alewine and the Deposition of Edward

B FMW 759316 v9
2780973-000281 10/9/2007

5.      Post-confirmation, but during the pendency of the Chapter 13 case, Plaintiffs failed to provide proof of insurance on their personal residence as required by the terms of the Mortgage, for the post-confirmation periods of August 3, 2000 through August 3, 2001, and August 3, 2001 through August 3, 2002.[5] As a result, the servicer of the Mortgage made payments on Plaintiffs' behalf for the insurance force-placed on the Property (the "Force-Placed Insurance"). The two payments were made on October 25, 2000, and August 8, 2001.

6.      After the insurance was force-placed post-confirmation, the loan servicer made notes on Plaintiffs' account that there was an amount due to an escrow account established for the Force-Placed Insurance (the "Escrow Balance").

7.      However, the servicer of the Loan did not take any action to collect the charges for the force-placed insurance.

8.      At some time prior to November 1, 2002, Ocwen Federal Bank FSH ("Ocwen") assumed the responsibility for servicing the Loan. Effective November 1, 2002, Ocwen transferred the responsibility for servicing the Loan to Defendant,

---

Alewine, and all of the exhibits thereto, are contained in the Evidentiary Submission ASC filed in support of its Opposition to Plaintiffs' Motion for Summary Judgment. [See Docket No. 37].

[4] Deposition of Edward Alewine at 64; Deposition of Shelly Alewine at 26-27.

[5] *See* Letters contained in collective Exhibit 9 to Deposition of Cindy Shanabrook.

B FMW 759316 v9
2780973-000281 10/9/2007

ASC.[6] At the time of the loan transfer, the Escrow Balance was noted on Plaintiffs' accounts.

9.      On May 14, 2004, the Bankruptcy Court issued an order discharging Plaintiffs following the completion of their Chapter 13 plan (the "Discharge"). On May 17, 2004, the Bankruptcy Court closed the Bankruptcy Case. At that time, the automatic stay imposed by Section 362 of the Bankruptcy code expired by operation of federal bankruptcy law.

10.     By letters dated July 18, 2005 and March 30, 2006 (the "Post-Discharge Letters"), each over a year after the Discharge and the Bankruptcy Case was closed, ASC notified Plaintiffs of the existence of the Escrow Balance for failure to provide evidence that the Property was insured pursuant to the terms of the Mortgage.[7] As a result, in the Post-Discharge Letters, ASC noted an adjustment in Plaintiffs' monthly Loan payments to repay the Escrow Balance.[8]

11.     The Post-Discharge Letters were the first time ASC communicated with Plaintiffs regarding the Force-Placed Insurance and the resulting Escrow

---

[6] *See* "Notice of Assignment, Sale or Transfer of Servicing Rights" in Exhibit 8 to Deposition of Cindy Shanabrook Deposition.

[7] *See* Letters contained in collective Exhibit 9 to Deposition of Cindy Shanabrook; Deposition of Edward Alewine at 18.

[8] *See id.*

Balance.[9] ASC did not make any effort to collect the Escrow Balance for the Force-Placed Insurance prior to the Discharge or prior to 2005.[10]

12.    As previously stated, all collection activity related to the Escrow Balance occurred after the Plaintiffs' Bankruptcy Case had closed and the automatic stay had expired.

### III.  ARGUMENT

**A.    The Bankruptcy Court Lacks Subject Matter Jurisdiction Because: (i) This Matter is Not Related to any Bankruptcy Proceeding and (ii) This Matter is Not a Core Proceeding**

The initial question is whether the Bankruptcy Court has subject matter jurisdiction over Plaintiffs' claims. A bankruptcy court's jurisdiction begins and ends with its statutory grant pursuant to 28 U.S.C. § 1334(b). A bankruptcy court's jurisdictional reach is significantly less than that of this Court:

> The district court's jurisdictional mandate is to give the parties before it complete relief. Its ability to do so would be incomplete and entirely inadequate for this purpose unless it also had the power to enforce its judgments. Bankruptcy jurisdiction is more circumscribed. It "is designed to provide a single forum for dealing with all claims to the bankrupt's assets." Once this jurisdictional mission has been fulfilled, the jurisdiction conferred by § 1334(b) comes to an end.[11]

---

[9] Deposition of Edward Alewine at 60.

[10] *Id.*

[11] *Miller v. Conte (In re Import & Mini Car Parts, Ltd.)*, 203 B.R. 124, 129 (N.D. Ind. 1996) (citations omitted) (affirming bankruptcy court's dismissal of claim based on court's lack of ancillary jurisdiction), *aff'd*, 97 F.3d 1454 (7th Cir. 1996).

5

Title 28, Section 1334 of the United States Code provides in part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11".[12]

The distinction between whether a proceeding "arises under," "arises in a case under," or is "related to case under" Title 11, as provided for in 28 U.S.C. § 1334, however, is irrelevant in cases where the matter in question is not even "related to" a bankruptcy case. [13] These references operate conjunctively to define the scope of jurisdiction.[14] As a result, for jurisdictional purposes, it is only necessary to determine whether a matter is at least "related to" the bankruptcy.[15] A case that is not "related to" a bankruptcy case, by definition, does not "arise under title 11" or "arise in" a case under title 11.

Here there is no matter "related to" the Bankruptcy Case since the Bankruptcy Case was long since closed and the Plaintiffs were long since discharged at the time the complained of activities took place. Moreover, a money claim against a lender based on post-discharge activities that does not affect estate property of any bankruptcy case, such as Plaintiffs' claims, cannot be a core

---

[12] 28 U.S.C. § 1334(b).

[13] *Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987).

[14] *Id.*

[15] *Id.*

B FMW 759316 v9
2780973-000281 10/9/2007

proceeding, as Plaintiffs now claim. Therefore, because Plaintiffs' claims are not related to any bankruptcy proceeding and because Plaintiffs' claims are not core proceedings, the Bankruptcy Court lacks subject matter jurisdiction over this case.

1. <u>This Matter is Not Related to any Bankruptcy Proceeding Because the Outcome could Not in Any Way Impact the Handling and Administration of a Bankrupt Estate</u>

The fundamental inquiry as to a bankruptcy court's jurisdiction is whether the matter is "related to" a bankruptcy case.[16] As the Eleventh Circuit has noted, "[t]he 'related to' connection has been described as 'the *minimum* for bankruptcy jurisdiction' "[17] (emphasis provided).

In the Eleventh Circuit "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[18]

Here, there is no debtor and there is no bankruptcy estate. Plaintiffs had filed a Chapter 13 petition to institute the Bankruptcy Case, but since that December 2, 1999 filing, a plan was confirmed on February 14, 2000, the plan was completed

---

[16] *Matter of Celotex Corp.*, 152 B.R. 667, 671 (Bankr. M.D. Fla. 1993).

[17] *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir. 1999).

[18] *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984); *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S. Ct. 1493, 1499 at n. 6  (1995) expressing approval of the *Pacor* test and noting that *Pacor* and related cases "make [it] clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.").

on or before May 13, 2004, the Bankruptcy Court discharged the Debtors on May 14, 2004, and the Bankruptcy Court closed the Bankruptcy Case on May 17, 2004.

Because there is no current debtor; because the Plaintiffs have long since been discharged; because there is no current bankruptcy estate; and because the Bankruptcy Case has long since been closed, this matter can neither alter any debtor's rights, liabilities, options, and freedom of action nor in any way impact the handling and administration of any bankrupt estate.[19] As noted by this Court, "[t]he court interprets 28 U.S.C. § 1334 to contemplate *pending* bankruptcy proceedings"[20] (emphasis provided).

The Bankruptcy Court does not, therefore, have "related to" jurisdiction over this case.

2. This Matter is Not a Core Proceeding Because it Does Not Involve Property of the Estate

As previously stated, Plaintiffs assert that the Bankruptcy Court has jurisdiction over this matter because this matter is a core proceeding. However, in the Eleventh Circuit, Plaintiffs must show that the alleged core proceeding

---

[19] *See Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 327 (M.D. Ala. 1994) (noting that because debtor's bankruptcy case was closed, the bankruptcy estate no longer existed, and there was no longer a bankruptcy estate being administered which could be affected, and as a result, the court found the action not to be one which arises under or related to a Title 11 proceeding).

[20] *Id.*

involves property of the estate in order to invoke the jurisdiction of the Bankruptcy Court.[21]

In *In re Toledo*, an alleged core proceeding was held by the Eleventh Circuit not to be a core proceeding. In that case, an adversary proceeding based on one of the several example core proceedings found under 28 U.S.C. § 157(b)(2) but regarding non-debtor property was held not to be a core proceeding since it did not involve property of the estate.[22]

As noted by the Eleventh Circuit in *Toledo*:

> To the extent that the literal wording of some of the types of [core] proceedings [enumerated under 28 U.S.C. § 157(b)(2)] might conceivably seem to apply, it should be remembered that engrafted upon all of them is an overarching requirement that property of the estate under § 541 be involved.[23]

Under the rule in *Toledo*, if the instant proceeding does not concern property of the estate, then Plaintiffs' motion does not concern a core proceeding.

In this case, property of the estate is not at issue, so Plaintiffs' motion does not concern a core proceeding. When Plaintiffs filed their Chapter 13 petition on December 12, 1999, their property became property of the estate.[24] At that time,

---

[21] *See In re Toledo,* 170 F.3d 1340 (11th Cir. 1999).

[22] *Id. at* 1347 - 48.

[23] *Id.* at 1348 *citing Gallucci v. Grant* (*In re Gallucci*), 931 F.2d 738, 742 (11th Cir. 1991) (noting that § 157(b)(2)(E) category for turnover actions applies only to orders to turn over property of the estate).

[24] 11 U.S.C. § 541.

the automatic stay of any act against property of the estate arose by operation of law and continued until such property was no longer property of the estate.[25] In a Chapter 13 case, unless the plan or the order of confirmation provide otherwise, confirmation of a plan "vests all of the property of the estate in the debtor."[26] On February 14, 2000, Plaintiffs' Chapter 13 plan was confirmed.

However, neither the Plaintiffs' Chapter 13 plan nor the order of confirmation of Plaintiffs' Chapter 13 plan provided that the property of the estate was to remain with the estate.[27] As a result, the automatic stay was terminated upon Plaintiffs' Chapter 13 plan confirmation on February 14, 2000[28] – years before the Post-Discharge Letters were sent in 2005 and 2006, and months before the Escrow Balance for the Force-Placed Insurance was placed on Plaintiffs' account. Therefore, as a matter of law, the automatic stay from the Bankruptcy Case had terminated before the Post-Discharge Letters were mailed to Plaintiffs, and the subsequent mailing of the Post-Discharge Letters were not attempting to collect from the property of the estate, but from the Plaintiffs who, incidentally, were former debtors.

---

[25] 11 U.S.C. § 362(c).

[26] 11 U.S.C. § 1327(b).

[27] *Chapter 13 Plan*, filed December 20, 1999, in Chapter 13 case of Edward and Shelly Alewine, Bankruptcy Case Number 99-05963 for the U.S. Bankruptcy Court for the Middle District of Alabama; *Order Confirming Plan*, filed February 14, 2000, in Chapter 13 case of Edward and Shelly Alewine, Bankruptcy Case Number 99-05963 for the U.S. Bankruptcy Court for the Middle District of Alabama.

[28] *See* 11 U.S.C. § 1327(b).

As a result, any action regarding the Escrow Balance resulting from the Force-Placed Insurance does not belong to Plaintiffs as debtors in the Bankruptcy Case. Therefore, no estate property is involved in this matter and this matter does not involve a core proceeding.

Plaintiffs' motion concerns a matter unrelated to the Bankruptcy Case. Since it is well established that bankruptcy courts may not entertain cases involving non-core, unrelated matters,[29] and since Plaintiffs' claims involve non-core, unrelated matters, the Bankruptcy Court does not have jurisdiction to hear those claims.

3.  This Court may make Determinations Regarding Whether the Automatic Stay is Applicable to this Matter

While there is a split of authority among federal courts over whether a court, other than the bankruptcy court in which a bankruptcy proceeding is, or was, pending, has jurisdiction to determine whether a matter in a case pending in another court is subject to the automatic stay of § 362, "[t]he clearly predominant rule is that jurisdiction is concurrent, and that the court in which the non-bankruptcy case is pending may determine the effect of the stay on that case."[30] As

---

[29] 28 U.S.C. § 157(a). *See also In re Gallucci*, 931 F.2d 738 (11th Cir. 1991).

[30] *Klass v. Klass*, 831 A.2d 1067, 1071 (Md. 2003); *See also* 5 William L. Norton Jr., Norton Banrk. L. & Prac.2d § 118:3 (Norton ed.2000) (noting that "[t]he majority position may be emerging that nonbankruptcy courts have concurrent jurisdiction to determine whether the automatic stay applies to an action or proceeding in that court.").

11

a result, this Court should determine if the automatic stay of the Bankruptcy Case was in existence and if it was violated by the Post-Discharge Letters.

**B.    ASC Did Not Violate the Automatic Stay Merely by Assessing Charges for the Force-Placed Insurance**

As previously stated, the collection of the Force-Placed Insurance charges, after the expiration of the automatic stay, cannot possibly result in a violation of the automatic stay. There is a further question, however, whether the mere assessment of charges (as opposed to the collection of charges) made during the course of a bankruptcy case is a stay violation. As set forth herein, there is substantial authority that a mere assessment of charges is not a violation.

    1.    The Assessment of Force-Placed Insurance Charges is Not a Stay Violation

Section 1322(b)(2) of the Bankruptcy Code provides that a Chapter 13 plan can "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence...*"[31] (emphasis provided). As noted by Judge Keith Lundin of the United States Bankruptcy Court for the Middle District of Tennessee, in his treatise on Chapter 13 bankruptcy cases, "[p]ost-confirmation late charges, escrow account shortfalls, force-written insurance premiums and other contract charges that accrue

---

[31] 11 U.S.C. 1322(b)(5).

B FMW 759316 v9
2780973-000281 10/9/2007

under a mortgage during a Chapter 13 case don't go away at discharge."[32] As a result, to the extent that the Loan was secured only by the Mortgage on the Property, the Mortgage and Note survive Chapter 13 confirmation unmodified.[33]

Here, Plaintiffs' principal residence was security for the Mortgage, and as the Loan was secured only by the Mortgage, the Mortgage and Note were not modified by Plaintiffs' Chapter 13 plan. Therefore the provisions of the Mortgage and Note, including the requirements to provide proof of insurance on the Property, remained in full force and effect.

As a result, the post-discharge attempt to collect the Escrow Balance, which was assessed post-confirmation under the provisions of the Mortgage and Note was permissible pursuant to the confirmed plan of the Bankruptcy Case and Section 1322(b)(2) of the Bankruptcy Code.[34]

Moreover, a simple assessment of a post-confirmation charge without any attempt to collect also does not violate the automatic stay.[35] In *Mann v. Chase*

---

[32] Lundin, Keith M., 2 Chapter 13 Bankruptcy § 131.1 at page 131-5(3d ed. 2004).

[33] *See, e.g., Telfair v. First Union Mortgage Corp.*, 224 B.R. 243, 247 - 48 (Bankr. S.D. Ga. 1998), *aff'd* 216 F.3d 1333 (11th Cir.), *cert. denied* 531 U.S. 1073 (2001) (finding that after the Chapter 13 debtor's plan was confirmed, the terms of the mortgage survived confirmation and the terms of the mortgage and applicable state law governed the allowance of post-confirmation fees as agreed to in the mortgage).

[34] *See, e.g., In re Araujo*, 277 B.R. 166 (Bankr. D.R.I. 2002) (noting that mortgagee's right to post-confirmation fees and expenses, including insurance charges, was governed by the note and mortgage, and that right existed separate from the plan and apart from, and not subject to modification in, the pending bankruptcy case).

[35] *See* 11 U.S.C. § 362(a).

13

*Manhattan Mortg. Corp.*,[36] a lender made post-petition but pre-confirmation entries on Chapter 13 debtor-mortgagor's account of amounts due under the mortgage.[37] The court noted that, "these post-petition bookkeeping entries by Chase did not implicate Bankruptcy Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, but in no manner communicated to the debtor, the debtor's other creditors, the bankruptcy court nor any third party plainly are not the sort of 'act' Congress sought to proscribe".[38]

Here, like in *Mann*, post-petition but pre-confirmation assessments were made on Plaintiffs' account due under a mortgage. Further, these assessments were made without any communication to Plaintiffs, Plaintiffs' other creditors, the Bankruptcy Court, or any other third party. Similarly, the unilateral accruals made on Plaintiffs' account here, as in *Mann*, do not violate the automatic stay.

2. <u>The Cases Cited by Plaintiffs Are Easily Distinguished</u>

Plaintiffs cite two cases as past examples of ASC violating the automatic stay: *In re Slick*[39] and *In re Jones.*[40] Both cases are easily distinguishable.

---

[36] *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003).

[37] *Id.*

[38] *Id.*

[39] 280 B.R. 722 (Bankr. S.D. Ala. 2001).

[40] 366 B.R. 584, 2007 WL 1112047 (Bankr. E.D. La. 2007)

B FMW 759316 v9
2780973-000281 10/9/2007

*In re Slick* concerns the certification of a class for a class action suit against Norwest Mortgage, Inc. regarding allegedly improper servicing of loans of Chapter 13 debtors.[41] It does not, as Plaintiffs contend, stand for the proposition that ASC was cited for a past violation of the automatic stay in a separate case. *In re Slick* is entirely distinguishable from this matter as it does not concern the violation of any automatic stay, but the certification of a class.[42] Moreover, even the underlying class certification concerns the failure of lender to file fee applications for undisclosed or improperly disclosed pre-confirmation fees.[43] Here, the instant matter concerns *post*-confirmation expenses incurred under the terms Mortgage, which as shown in the analysis above, are permissible pursuant to Section 1322 of the Bankruptcy Code.

*In re Jones,* on the other hand*,* concerns the collection of undocumented, and presumably unreasonable, pre- and post-confirmation legal fees and the improper application of Chapter 13 estate funds by Wells Fargo Home Mortgage, Inc. to non-authorized, non-disclosed attorney's fees instead of the proper application of payments as required by the order of the bankruptcy court in approving the plan. It does not, as Plaintiffs contend, stand for the proposition that ASC was cited for violation of automatic stay. The instant matter concerns documented and

---

[41] *See In re Slick*, 280 B.R. at 723.

[42] *Id.*

[43] *Id.*

B FMW 759316 v9
2780973-000281 10/9/2007

reasonable post-confirmation insurance expenses and further does not concern the diversion of Chapter 13 estate funds in contravention of a court order.

**C.    Transfer of Venue to the Bankruptcy Court Would Not Serve the Convenience of the Parties.**

Finally, even assuming the Bankruptcy Court could take jurisdiction over this matter, this Court should not, in the exercise of its discretion transfer venue to the Bankruptcy Court pursuant to 28 U.S.C. § 1404.  Plaintiffs chose to bring their claims against ASC in this Court, and the case has progressed far enough in this Court that transferring the case to Bankruptcy Court would result in a significant and unnecessary waste of time and resources.

In considering whether to transfer a case for the convenience of the parties under Section 1404, courts typically consider the following factors:

> (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F. 3d 1132, 1135 n.1 (11th Cir. 2005).  In this case, factors (1), (2), (4), (5), and (6) – which relate to the convenience of witnesses, the location of documents, the locus of facts, and the ability to compel

witnesses to attend - are not applicable because this Court and the Bankruptcy Court are located in the same geographic area.

Factors (3), (8), and (9) strongly favor denial of Plaintiffs' motion to transfer venue. As to factor (3), the convenience of the parties, Plaintiffs have already commenced litigation in this Court, conducted discovery, and filed a motion for summary judgment. Transfer of this case to the Bankruptcy Court, which is not already familiar with the facts and procedural posture of this case, would only serve to delay the timely resolution of this matter.

Factor (8), the plaintiff's choice of forum, ordinarily would weigh in favor of the plaintiff. However, in this case, Plaintiffs already have chosen this forum, only to request this Court to transfer the case to another venue, upon deciding, mistakenly, that the case might present an issue of federal bankruptcy law. Under these circumstances, it is only fair to give Plaintiffs *original* choice of forum, this Court, some deference.

As for factor (9), relating to judicial economy, it is in the interest of judicial economy for this Court to hear Plaintiffs' complaints regarding this matter. It makes little practical sense, despite Plaintiffs' suggestions, to refer a portion of Plaintiffs' complaint against Defendants the Bankruptcy Court while hearing the remainder of Plaintiffs' claims against the Defendants in this Court.

B FMW 759316 v9
2780973-000281 10/9/2007

The Sixth Circuit Court of Appeals addressed this type of request in *In re Dow Corning Corp.*[44] In that case, the district court granted the motion to transfer as to some claims made against the debtor, but denied the motion to transfer as to other claims against shareholders. The Sixth Circuit issued a writ of mandamus ordering the transfer of all of the claims to the bankruptcy court, stating that:

> As an initial matter, it makes little practical sense to transfer the claims against Dow Corning while refusing to transfer those against the shareholders. The claims against the shareholders arise from an identical set of facts and are merely duplicates of those against Dow Corning.[45]

The same principal should apply here, where Plaintiffs' claims that it wishes to bifurcate to the Bankruptcy Court from the other claims it wishes this Court to hear arise from an identical set of facts. Here, as in *Dow Corning*, it is against the interests of judicial economy for the Bankruptcy Court to hear Plaintiffs' claims, arising from the identical set of facts and which have been litigated in this Court for over a year.

## IV.    CONCLUSION

Based on the foregoing, ASC respectfully submits that Plaintiffs' Motion for a Referral to a Bankruptcy Court is due to be denied.

---

[44] 113 F.3d 565 (6th Cir. 1997)

[45] 113 F.3d at 570.

18

/s/ D. Keith Andress
D. KEITH ANDRESS (AND053)
JAMES H. WHITE, IV (WHI102)

Attorneys for America's Servicing Company

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Ste. 1600
Birmingham, Alabama  35203
(205) 328-0480 – telephone
(205) 322-8007 – facsimile
kandress@bakerdonelson.com
jwhite@bakerdonelson.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2007, the foregoing has been served upon the following counsel of record by electronic mail via the Court's cm/ecf system:

Mr. Nicholas H. Wooten
Mr. Anjali Kamath
Wooten Law Firm, P.C.
P.O. Drawer 290
Lafayette, AL  36862


/s/ D. Keith Andress
Of Counsel

B FMW 759316 v9
2780973-000281 10/9/2007