IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| EDWARD H. ALEWINE, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 3:06cv886-MHT |
| | ) |
| AMERICA'S SERVICING COMPANY, | ) |
| | ) |
|     Defendant. | ) |

### DEFENDANT'S REPLY TO PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL ANSWERS TO THEIR THIRD CONSOLIDATED DISCOVERY REQUESTS TO DEFENDANTS

COMES NOW Defendant, America's Servicing Company ("ASC"), and replies to Plaintiffs' Brief in Support of Their Motion to Compel:

### SUMMARY OF ARGUMENT

On October 10, 2007, this Court held a hearing on Plaintiffs' Motion to Compel Answers to Their Third Consolidated Discovery Requests to Defendant ("Plaintiffs' Brief"). During oral argument, Plaintiffs' counsel stated that there were cases supporting his clients' discovery positions that were not cited in their brief. This Court provided Plaintiffs with an opportunity to locate these cases and file a brief that set forth the reasons that such cases support their discovery positions.

Plaintiffs failed to provide any cases supporting their arguments, and instead, simply regurgitated general (and inapplicable) law pertaining to generic objections. Accordingly, Defendant submits that this Court should overrule Plaintiffs' Motion to Compel other than what the Court has already ruled is discoverable.

## ARGUMENT

ASC will now address each category of information which is the subject of Plaintiffs' Motion to Compel.

### I.     "Other Loans Serviced by Defendant."

Plaintiffs seek information pertaining to other loans serviced by the Defendant.[1] Defendant specifically objected to information pertaining to other loans on the grounds that the status of other loans has no bearing on the status of the subject loan. Plaintiffs were instructed by the Court to provide case law establishing that the status of one loan could affect the status of another loan to a different borrower.

No case law was provided. Defendant submits that Plaintiffs could not provide such a case because no such case exists. Plaintiffs' assertion that the status

---

[1] Plaintiffs' Interrogatory 25.

2

of one loan could affect the status of another unrelated loan is not a correct statement of law.

Despite failing to provide any supporting case law, Plaintiffs' tried an alternate rout to obtain discovery of this information. Plaintiffs now argue that if Defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" then an element of the Fair Debt Collection Practices Act ("FDCPA") is satisfied. (Plaintiffs' Brief p. 4). Plaintiffs' argument misses the point.

Defendant is a loan servicer; an entity that, among other things, collects and processes loan payments for other creditors. Defendant's collection activities are not a disputed issue in the case. In fact, Defendant's corporate representative, Natasha Dzura, testified that ASC is a division of Wells Fargo that services non-Wells Fargo loans. (Dzura Deposition pp. 18-20). (Excerpts from the Natasha Dzura deposition are attached hereto as Exhibit A).

The issue in this case pertaining to the FDCPA is whether Defendant, as a loan servicer, is exempt from the statute. The FDCPA exempts loan servicers unless the subject loan was in default when the servicer became responsible for the loan. *Brumberger v. Sallie Mae Serv. Corp.,* 84 Fed. App. 458 (5th Cir. 2004); *see also Dawson v. Dovenmuehle Mortgage, Inc*., 2002 WL 501499 (E.D. Pa. 2002). Thus, the only FDCPA issue in this case is whether Plaintiffs' loan was in default

3

when Defendant became the loan servicer. Information pertaining to loans of other borrowers has no bearing on the payment history of the subject loan. Accordingly, Plaintiffs' discovery requests for information pertaining to "other loans" are due to be denied.

## II. "Other Loans Considered to be in Default at the Time They Were Purchased."

Plaintiffs' request for "other loans considered to be in default when they were purchased on [November 1, 2002]" is a subset of the information they seek in Section I, *supra*.[2]

The only additional argument Plaintiffs make here is a hypothetical involving Defendant's servicing of several loans in default, or alternatively, one defaulted loan out of 100,000 loans. (Plaintiffs' Brief pp. 5-6). Plaintiffs argue that this hypothetical demonstrates why such information is discoverable. However, Defendant cannot ascertain any relevant point to the hypothetical nor can Defendant following Plaintiffs' reasoning in a discernable fashion.

Defendant can only respond to Plaintiffs' hypothetical by reiterating that Plaintiffs have provided no case law or statutory authority supporting their claim that one unrelated loan can affect the status of another. Accordingly, their request for other loan information is due to be denied.

---

[2] Plaintiffs' Interrogatory 26.

### III. "How Many Loans Wells Fargo Services in the Name of America's Servicing Company Which are [Currently] in Default."

This request[3] basically repeats their earlier request discussed in Section II. Plaintiffs have no case law or statutory authority to support their position. The only additional grounds Plaintiffs provide in seeking "serviced loans that are currently in default" are an unsubstantiated and incorrect legal statement regarding use of a trade name, and an unsupported conclusory statement.

Neither of Plaintiffs proffered reasons for discovery of this information has any merit. First, Plaintiffs have failed to provide any support that use of a trade name violates the FDCPA even *for persons subject to the statute*. As discussed *infra*, Defendant is not subject to the FDCPA. Further, Plaintiffs have deposed Defendant's corporate representatives and have ample testimony regarding the nature and structure of the relationship between Wells Fargo and America's Servicing Company. The number of loans serviced by Defendant is not relevant to the trade name issue. Accordingly, Plaintiffs do not need the requested information to pursue this legal theory if they truly believe that it has any merit.

Second, Plaintiffs' statement that "other loans in default" is "a critical piece of evidence," fails to articulate any reason this information is relevant to this dispute.

---

[3] Plaintiffs' Interrogatory 27.

5

Accordingly, their request for this information is due to be denied.

## IV. "The Number of Total Loans Wells Fargo Services in the Name of America's Servicing Company."

Plaintiffs apparently seek this information[4] to establish that Defendant services loans that are in default. Again, Plaintiffs provide no explanation or legal support how this information has any relevance to this dispute. Plaintiffs make the conclusory statement that if 100% of the loans serviced by ASC are in default, "this would have high evidentiary value to the underlying case on a number of levels." Plaintiffs provide no explanation for this conclusory statement then, Plaintiffs contradict themselves and claim "if the ratio is 0%, then that would have qualitative evidentiary value as well."

The fact Plaintiffs contradictorily claim that both 100% and 0% have evidentiary value is, in reality, proof that neither has evidentiary value and that this request is simply an overreaching fishing expedition into irrelevant areas.

Accordingly, Plaintiffs' request for this information is due to be denied.

## V. Whether America's Servicing Company or Wells Fargo has Ever Been Found to be a Debt Collector Within the Meaning of the FDCPA.

Plaintiffs failed to provide this Court with any case holding that if Defendant has previously been found to be a debt collector, then it would be a debt collector

---

[4] Plaintiffs' Interrogatory 28.

6

in this case.[5] Any such claim would be an incorrect statement of law. In order for Defendant to be a debt collector in this case, it must have begun servicing Plaintiffs' loan when it was in default.

Factually, this did not happen. Both Plaintiffs and Defendant testified that Plaintiffs' loan was not in default at the time Defendant became the servicer. Therefore, the FDCPA does not apply, regardless of whether Defendant has been found to be a debt collector in regards to servicing a different loan.

Accordingly, Plaintiffs' request for this information is due to be denied.

## VI. The Number of Times This Defendant Has Been Sued for Failing to Respond to a Qualified Written Request.

During oral argument, Plaintiffs' counsel claimed that a case existed holding that a servicer's failure to respond to a Qualified Written Request for a different borrower could be used as "pattern and practice evidence" under 12 U.S.C. § 2605(f)(1)(b) for the subject loan. Plaintiffs were allowed time to locate and provide this case to the Court.

Plaintiffs provided *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, supporting its assertion. However, *Ploog* does not stated for the proposition that a servicer's failure to respond to a different borrower's QWR can be used as pattern and practice evidence for the subject loan. In *Ploog*, the servicer failed to respond

---

[5] Plaintiffs Interrogatory 29.

to five QWRs *sent by the plaintiff*, not a different borrower.  The *Ploog* case is inapposite to the present matter.  Defendant cites *Barnett v. T.D. Escrow Serv. Inc.* which holds as a matter of law, a servicer's failure to respond to one QWR does not amount to a pattern and practice under RESPA.  No. C05-799JLR, 2005 WL 1838623, at *3 (W.D. Wash. Aug 1, 2005) (citing *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (failing to respond to one qualified request does not rise to a "pattern or practice"); *In re Tomasevic*, 273 B.R. 682, 686-87 (Bankr. M.D. Fla. 2002)).

Here, it is undisputed that the Plaintiffs' only sent one letter to Defendant and that this letter was fully responded to, albeit outside the sixty day period required by RESPA.  Under these facts and the law, there could be no "pattern and practice" of failing to respond to Plaintiffs' QWR.

Relatedly, Plaintiffs ask for "the number of times [Defendant] has been sued wherein it was alleged that the Defendant violated the Fair Debt Collection Practices Act."[6]  Again, this is an irrelevant inquiry and Plaintiffs have provided no case law or statutory support holding otherwise.

In *Robinson v. Kierce*, 513 So. 2d 1005 (Ala. 1987), the Alabama Supreme Court stated:

---

[6] Plaintiffs' Interrogatory 38.


> The complaint in a lawsuit is no more than the means of commencing an action, and the mere filing thereof does not import verity. A certain degree of proof is required before a plaintiff can recover. The idea that a complaint filed in one action can be introduced in another action to establish the truthfulness of the allegations in the complaint transcends our established rules of evidence.

*Id.*

Accordingly, Plaintiffs' request for information on other lawsuits should be denied.

Respectfully submitted,

/s/ D. Keith Andress
D. KEITH ANDRESS
JAMES H. WHITE, IV

Attorneys for America's Servicing Company

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Ste. 1600
Birmingham, Alabama  35203
(205) 328-0480 – telephone
(205) 322-8007 – facsimile
kandress@bakerdonelson.com
jwhite@bakerdonelson.com

## CERTIFICATE OF SERVICE

  I hereby certify that on November 2, 2007, the foregoing has been served upon the following counsel of record by electronic mail via the Court's cm/ecf system:

Mr. Nicholas H. Wooten
Mr. Anjali Kamath
Wooten Law Firm, P.C.
P.O. Drawer 290
Lafayette, AL  36862

            /s/ D. Keith Andress
            Of Counsel

# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE MIDDLE DISTRICT OF ALABAMA

 3                         EASTERN DIVISION

 4
```



```
 5      EDWARD H. ALEWINE and
        SHELLY M. ALEWINE,
 6
                   Plaintiffs,
 7

 8         vs.                    CASE NO.: 3:06cv886-MHT

 9      AMERICA'S SERVICING COMPANY,

10                 Defendant.

11

12         *   *   *   *   *   *   *   *

13                   September 28th, 2007

14         Videotaped Deposition of Kathryn Moore

15                    and Natasha Dzura

16         *   *   *   *   *   *   *   *

17

18      The videotaped deposition of **Kathryn Moore and**

19   **Natasha Dzura** was taken before Stephanie D. Garrett,

20   Certified Court Reporter, ACCR No. 49, as Commissioner,

21   on Friday, September 28th, 2007, commencing at

22   approximately 10:32 a.m., in the law offices of Baker,

23   Donelson, Bearman, Caldwell & Berkowitz, P.C.,

24   Birmingham, Alabama, pursuant to the stipulations set

25   forth herein.
```

Stephanie D. Garrett, CCR, CSR - (334)566-2039

1   Servicing Company?

2          **MS. MOORE:** It says Wells Fargo.

3          **MR. WOOTEN:** Okay. I understand from

4   Ms. Shanabrook that America's Servicing

5   Company is a business name, or fictitious

6   name, or trade name for Wells Fargo.

7          **MS. MOORE:** It's a doing --

8          **MR. ANDRESS:** Object to the form, the

9   term fictitious.

10         **MR. WOOTEN:** Well, in the legal sense --

11         **MS. MOORE:** We are -- we are a d/b/a.

12         **MR. WOOTEN:** Right. It's a doing

13  business as name of Wells Fargo?

14         **MS. MOORE:** Correct.

15         **MR. WOOTEN:** Do you have a separate part

16  of the building that's dedicated to ASC? Is

17  it contained within the same -- I mean, do

18  you have cubicles for somebody that works for

19  just Wells Fargo or --

20         **MS. MOORE:** No. I mean, the department

21  would be --

22         **MR. WOOTEN:** Consolidated?

23         **MS. MOORE:** -- consolidated as America's

24  Servicing Company.

25         **MR. WOOTEN:** Okay. And do you know how

Stephanie D. Garrett, CCR, CSR - (334)566-2039

a Wells Fargo loan becomes assigned to
America's Servicing Company?

**MS. DZURA:** Yeah. The difference between the Wells side versus the America's Servicing Side is that we are just the servicer. We don't originate these loans. We are working on behalf of an investor. So we are servicing them. We don't originate them. The Wells Fargo side, typically, we originate them. So there are loans from today through the end. We are only servicing loans on behalf of them.

**MR. WOOTEN:** And I assume then that America's Servicing Company also services loans where the investor is Wells Fargo.

**MS. DZURA:** No. That would be incorrect. I don't believe -- and I can't 100 percent speak to that, because each acquisition is different. But it's my understanding that, no, we -- I mean, we wouldn't. It wouldn't be under that side.

**MR. WOOTEN:** And I'll -- I'll dig out some documents later, but in this case, the documents say that Wells Fargo is the owner of this loan.

Stephanie D. Garrett, CCR, CSR - (334)566-2039

20

1    MS. DZURA:  I would have to review those
2  documents.
3    MR. WOOTEN:  We will.  We'll talk about
4  that in a minute.
5    MS. DZURA:  Okay.
6    MR. WOOTEN:  But you're saying that
7  commonly you're servicing for some
8  securitized trust or something of that
9  nature?
10   MS. DZURA:  Correct.
11   MR. WOOTEN:  And I note on some of these
12  documents -- and we'll get to this in a
13  minute -- but there's the term SOPAC, where
14  it says loan type under -- is it call notes?
15  Would that be like the securitized trust that
16  owns that loan?
17   MS. DZURA:  Correct.  I would have to
18  review the actual contract to know, but yeah.
19  It would most likely be that.
20   MR. WOOTEN:  So what you -- in effect,
21  what you're saying is that ASC is a d/b/a
22  that Wells Fargo set up to service particular
23  loans?
24   MS. DZURA:  Right.  To service on behalf
25  of the investor.  Sure.

Stephanie D. Garrett, CCR, CSR - (334)566-2039